FILED
United States Court of Appeals
Tenth Circuit

**January 21, 2009**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WESTAR ENERGY, INC., a Kansas
corporation,

        Plaintiff -
        Counter-Defendant - Appellant,

    v.

DOUGLAS T. LAKE,

        Defendant -
        Counter-Claimant - Appellee.

Nos. 07-3219 & 07-3280

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 05-CV-4116-JAR)**

---

Kirk T. May (Charles W. German and Jason M. Hans with him on the briefs) of
Rouse, Hendricks, German, May, P.C., Kansas City, Missouri, for Plaintiff -
Counter-Defendant - Appellant.

Edward J.M. Little, Hughes, Hubbard & Reed, L.L.P., New York, New York
(F. James Robinson, Jr., Hite, Fanning & Honeyman, L.L.P., Wichita, Kansas,
with him on the brief), for Defendant - Counter-Claimant - Appellee.

---

Before **MURPHY**, **BRORBY**, and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Plaintiff-Appellant Westar Energy, Inc. ("Westar") appeals an interlocutory order requiring Westar to advance past and future legal fees incurred by Defendant-Appellee Douglas Lake for his criminal defense. The district court did not label the order a preliminary injunction, but it meets the elements of a preliminary injunction and this court therefore has jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1). The retrospective relief ordering the payment of past attorneys' fees cannot be upheld as a preliminary injunction because the remedy is not necessary to prevent irreparable harm. The prospective relief ordering future advances, on the other hand, satisfies Rule 65 and the equitable standards necessary to justify a preliminary injunction, but the district court erred in effectively assigning Westar the burden of disproving the reasonableness of Lake's advancement requests. Accordingly, we **affirm in part** and **reverse in part**.

## I. Background

Lake was hired by Westar in the fall of 1998 to be the company's Chief Strategic Officer and Executive Vice President. In 2001, he became a director of the company. Westar's Articles of Incorporation provide for indemnification of officers and directors for costs and liabilities, including attorneys' fees, reasonably incurred in any proceeding in which they are involved as officers or directors of Westar. The Articles refer to the right as a contract right. Officers and directors also have a right under the Articles "to be paid by [Westar] the

expenses incurred in defending any such proceeding in advance of its final disposition." This right is dependent upon the officer or director delivering an "undertaking" to Westar promising to repay the amounts advanced if the individual is ultimately not entitled to indemnification.[1]

In September 2002, a federal grand jury began issuing subpoenas relating to allegations of fraud and financial impropriety on the part of several Westar executives, including Lake. The grand jury ultimately indicted Lake. In 2003, two civil complaints were filed against Westar; Lake was later added as a defendant in those actions.[2] Lake retained counsel to defend him in the pending criminal and civil actions. To trigger Westar's obligation to advance his legal fees, Lake signed undertakings agreeing to repay the advances should he ultimately not be entitled to indemnification.

One law firm retained by Lake to represent him in the civil actions and criminal proceedings was the New York firm Hughes Hubbard & Reed, LLP

---

[1]This diversity case arises under Kansas law. Under Kansas law, indemnity is only available to an officer if the officer acted in good faith and in a manner the officer reasonably believed to be in accordance with or not opposed to the corporation's interests. Kan. Stat. Ann. § 17-6305(b).

[2]The civil suits, a shareholder derivative action and a class action, settled in September of 2005. Although Lake's attorneys claim they are still owed advancements for their work in those cases, the district court declined to provide for the payment of those fees. It concluded the only action available for those fees was indemnification because the civil actions have concluded. Lake has not appealed this ruling.

("Hughes Hubbard"). Lake hired the Kansas firm Hite, Fanning & Honeyman LLP ("Hite Fanning") to serve as local counsel in the civil and criminal matters.

Lake submitted his first request for advancement of fees to Westar in March 2004. These fees were not immediately paid, however, because on April 5, 2004, the district court in the criminal case issued a restraining order against Westar specifically preventing the distribution of potentially forfeitable assets, including attorneys' fee advances, to Lake. The restraining order was modified on August 13, 2004, to allow for the advancement of legal fees in the criminal case. Hughes Hubbard then sent Westar two invoices for fees totaling over $2 million, and Westar paid both invoices in full.

Lake's first criminal trial began on October 12, 2004. Three days later, Hughes Hubbard sent an invoice for over $800,000 in fees and expenses. This time, Westar refused to pay the full amount. Westar informed Hughes Hubbard that the amount was unreasonably high. Without conceding any of the fees were reasonable, Westar advanced $500,000. Its stated reason for advancing this amount was that it did not want to distract Hughes Hubbard from its work in the ongoing trial.

The criminal trial ended in a mistrial on December 20, 2004. Between November 8 and December 13, 2004, Hughes Hubbard submitted three additional invoices to Westar, requesting advancements totaling over $1.8 million. Westar again objected to the reasonableness of the fees and advanced only $1.2 million.

-4-

Additionally, Westar and Lake agreed that in the event of a criminal conviction after a final determination of guilt, Lake would relinquish his rights to any assets held by Westar to the extent necessary to repay the advancements. On March 16, 2005, Hughes Hubbard submitted an invoice for over $890,000. Westar objected to the reasonableness of the bill on several specific grounds and withheld $90,000. Westar also purported to reserve the right to offset its payment against future bills if it did not receive satisfactory explanations to its objections.

On May 23, 2005, in advance of the second criminal trial, the district court in the criminal case imposed a restraining order requiring all advances to be placed in escrow as potentially forfeitable assets. In its order, the district court noted it lacked jurisdiction to compel Westar to pay legal fees, but it was the court's intention that Westar continue making advances into the escrow account. Despite the district court's suggestion, Westar ceased making advances. When Hughes Hubbard sent Westar an invoice for $780,000, Westar refused to advance anything. It deemed the amount unreasonably high and stated its view there was no purpose in advancing the funds into escrow since they were not immediately available for Lake's defense.

On September 15, 2005, the second trial ended and Lake was found guilty on some of the counts. The jury found, however, that the attorneys' fee advances were not forfeitable assets. Accordingly, the district court lifted the restraint on the advances of attorneys' fees. Instead of advancing the attorneys' fees incurred

in the second trial, Westar filed this declaratory judgment action premised on diversity jurisdiction seeking a determination of its obligation to advance. Lake brought a counterclaim for breach of contract. When Westar filed this suit in October of 2005, Lake had incurred nearly $4 million in unpaid fees and expenses.

Because Lake still needed representation in post-trial matters, the attorneys' fees continued to accrue. Lake retained another New York firm to handle his appeal, Wilmer Cutler Pickering Hale & Dorr LLP ("Wilmer Hale"). Wilmer Hale accrued fees and expenses totaling over $2.2 million pursuing Lake's appeal. Hughes Hubbard incurred over $900,000 in additional fees and expenses in connection with the criminal post-trial matters. Westar has advanced none of these fees.

In December of 2006, Lake filed a motion for summary judgment in the instant case on his breach of contract counterclaim, seeking "an order that Westar immediately advance to Lake the sum of $5,325,049.18, which constitutes 82% of the invoices for legal expenses Lake incurred against which Westar has advanced no money whatsoever."[3] Lake argued that reasonableness challenges to advancement requests are permitted in very limited circumstances, and the attempt to set off the fees from the first trial with those of the second trial was

[3]Lake sought only 82% of those invoices because Westar had paid, on average, 82% of the previous invoices. Thus, Lake argued, Westar had effectively conceded the reasonableness of 82% of Lake's fees.

-6-

unreasonable.  Lake did not specifically seek a preliminary injunction.  He did, however, state the relief he requested was interim because it would "in no way compromise Westar's right at the indemnification stage to recoup so much of the above amounts as are ultimately deemed unreasonable."

While Lake's motion was pending, several significant events occurred. First, this court reversed all of Lake's convictions, remanding some for a new trial. *United States v. Lake*, 472 F.3d 1247, 1267 (10th Cir. 2007).  The government intends to try Lake a third time.[4]  In response to the reversal of Lake's convictions, the district court in this matter requested expedited supplemental briefing on "the issue of Westar's liability with respect to future advancement of legal fees and expenses in the upcoming third criminal trial."  In its supplemental brief, Westar stated its intention to "advance in good faith" reasonable fees and expenses for the third trial, and requested the court to "set hourly rates . . . at rates customarily charged in Kansas for similar legal services, and grant such other relief as is appropriate under the circumstances."  Westar indicated its understanding that this relief would be interim in nature because it was not waiving its objection to "the overall reasonableness of all fees and expenses."  In his supplemental brief, Lake sought prospective, equitable relief in

---

[4]The third trial is subject to an expedited interlocutory appeal before this court.  *United States v. Wittig*, No. 08-3220.  No trial date has been set.  In advance of the third trial, the government sought, but was denied, a new restraining order prohibiting the advancement of attorneys' fees.

the form of an order requiring Westar to advance Lake's attorneys' fees as they came due.

On May 29, 2007, Hughes Hubbard and Hite Fanning moved to withdraw from representing Lake in the criminal case. As grounds for withdrawal, the firms cited Lake's inability to pay their substantial outstanding fees. While the motion to withdraw was pending in the criminal case, the district court ruled on Lake's motion for summary judgment in this case. The court first ruled Westar was only obligated to advance reasonable attorneys' fees. While disputed issues of material fact prevented the court from entering summary judgment, the court found it appropriate to grant two interim remedies: one retrospective, and one prospective. For retrospective relief, the district court noted the final resolution of the case might be "years away," and the right to advancement would be lost if payments were not made promptly. Accordingly, the court determined that "the appropriate measure of interim relief is immediate payment of 50% of the outstanding requests for out-of-state counsel, Hughes Hubbard and Wilmer Hale, and payment in full for local counsel, Hite Fanning."

For prospective relief, the district court exercised its "equitable power to establish certain limited procedures to ensure" Westar's compliance with its obligation to advance. The court ordered Westar to promptly pay Lake's legal fees at each lawyer's customary rates. If Westar objected to the reasonableness of a particular bill, it had to specify the objection within ten days of receipt of the

bill. It also had to timely pay any portion of the bill to which it did not object. If the parties did not settle the dispute within ten days, it would be submitted to a magistrate judge for expedited adjudication. Westar preserved the right to ultimately challenge the reasonableness of all the fees.

In response to the order, Westar filed a motion to set bond and a notice of appeal, arguing the order was a preliminary injunction. Westar also refused to pay the retrospective sum owed and Lake filed a motion seeking to have Westar held in contempt. The district court then denied Westar's motion to set bond and clarified and revised the order. Following that denial, Westar filed another notice of appeal and unsuccessfully sought a stay of the retrospective portion of the order with the district court and this court. Westar indicated at oral argument that it has now paid the retrospective amount ordered by the court.

Notwithstanding the entry of the interim order and Westar's announcement that it would comply with the prospective remedy even while appealing it, Hughes Hubbard and Hite Fanning proceeded in their efforts to withdraw as Lake's criminal counsel. Blackwell Sanders LLP, a Kansas City, Missouri law firm, entered its appearance for Lake in the criminal case as his new lead counsel. On November 6, 2007, the district court granted Hughes Hubbard and Hite Fanning's motion to withdraw from representation, excepting one Hughes Hubbard associate who was familiar with certain documents and issues in the case.

## II. Appellate Jurisdiction

Before addressing the merits of the appeal, this court must determine whether it has jurisdiction. The order of the district court does not constitute a final judgment so it cannot be appealed under 28 U.S.C. § 1291. Westar contends the order grants injunctive relief, and thus is appealable under 28 U.S.C. § 1292(a)(1). Both parties agree that this court defines injunctive relief as "all equitable decrees compelling obedience under the threat of contempt." *Consumers Gas & Oil, Inc. v. Farmland Indus.*, 84 F.3d 367, 370 (10th Cir. 1996) (quotation omitted). The district court, for its part, did not consider the relief injunctive in nature. In determining whether a remedy constitutes an injunction, however, this court relies upon the substance of the underlying order, not simply its form. *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007).

Lake argues the interim order is unappealable because the relief granted by the district court was legal, not equitable, in nature. He claims if the remedy was legal, it cannot, by definition, be a preliminary injunction. He relies upon a Second Circuit case for the proposition that an order compelling payments "in accordance with a statute [granting] a right to preliminary relief" is not equitable and is therefore not immediately appealable. *Korea Shipping Corp. v. N.Y. Shipping Ass'n*, 811 F.2d 124, 126 (2d Cir. 1987).

Lake also argues that interlocutory appeals of this sort threaten to render the right to advancement a nullity. Because the underlying criminal proceeding is not stayed during this appeal, Lake argues Westar can "run out the clock" by taking advantage of the time-consuming appellate process. According to Lake, the right to advancement will become moot at the conclusion of the criminal trial. If Lake is acquitted and Westar must indemnify him, then Westar will be no worse off than if it had advanced the funds in the first place. If Lake is convicted and not entitled to indemnification, then Westar will likely owe nothing notwithstanding its failure to advance Lake's expenses.[5]

Lake's arguments are unconvincing. The district court directly ordered Westar to do two things prior to any adjudication on the merits: pay a certain dollar figure for accrued unpaid legal expenses and prospectively pay Lake's future legal expenses. The district court also explicitly invoked its equitable powers in granting the prospective relief. Lake, for his part, requested equitable relief in his supplemental brief, and has attempted to enforce the retrospective award through contempt proceedings. Under these circumstances, the order was a preliminary injunction.

---

[5]The Articles themselves do not condition indemnification upon an ultimate finding of guilt or innocence; instead, they extend indemnity in cases where the officer or director who acted in good faith and in a manner he reasonably believed to be in accordance with or not opposed to the corporation's interests. Neither party has argued, however, that Lake will be entitled to indemnity if he is ultimately convicted.

*Korea Shipping* is inapplicable here. The payments in question in that case were interim withdrawal liability payments mandated by ERISA. *Id.* at 125. In contrast, the Kansas advancement statute does not mandate payments; instead, it allows corporations to enter into contracts providing the right of advancement. Kan. Stat. Ann. 17-6305(e). An action seeking to enforce the right to advancement is an action for specific performance of a contract. Specific performance is an equitable remedy, and an interim grant of specific relief is a preliminary injunction. *See, e.g.*, *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1189-90 (10th Cir. 2008).

Lake's policy-based argument does not negate the essentially injunctive nature of the relief granted by the district court. While advancement claims must be adjudicated expeditiously so judicial rulings are enforceable while they retain value to the officer, federal law limits the procedures and mechanisms available to a litigant in federal court. If a party seeks to enforce a contract in federal court, the court must comply with the Federal Rules of Civil Procedure in adjudicating the claim.

The appealability of preliminary injunctive relief may, in some situations, impair an officer's ability to collect advances. Yet no such impairment is present here, as the district court's order has not been stayed and is enforceable during the pendency of this appeal. Lake's position would also present new obstacles for officers who, unlike Lake, are denied immediate interim relief. In such

circumstances, an immediate appeal would be absolutely vital to protecting the right to advances. In sum, while the preliminary injunction may be an imperfect remedy for enforcing the right to advances, it does not, as Lake suggests, destroy the value of advancement.

Lake's argument that Westar can run out the clock is further belied by his own pace in seeking preliminary relief. Westar began objecting to the reasonableness of Lake's attorneys' fees during the first trial. After the mistrial in December 2004, Lake made no effort to judicially enforce his right to advances. The May 2005 restraining order requiring advances to be placed in escrow may have justified the belief that a lawsuit would be futile at that point. Once the restraining order was lifted at the conclusion of the second trial, however, it was Westar, and not Lake, who brought a declaratory judgment action regarding its advancement obligation. Even after Lake filed his breach of contract counterclaim and Lake's attorneys continued to accrue fees in connection with post-trial motions and the appeal, Lake waited over a year to specifically seek preliminary relief. Under these circumstances, Lake is poorly positioned to argue that a preliminary injunction, with its right to immediate appeal, is not equal to the task of protecting his right to advances.

Because the relief granted by the district court was not labeled an injunction by the district court, Lake argues it must also meet the harm test set out in *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981). Under *Carson*,

an interlocutory order with the "practical effect" of denying an injunction is only appealable if the litigant can show a "serious, perhaps irreparable, consequence" and the order can only be "effectually challenged" upon interlocutory appeal. *Id.* (quotations omitted). We decline to apply the *Carson* test to the facts of this case. While *Carson* applies in situations where orders have the practical effect of denying an injunction, orders which themselves grant or deny injunctive relief are appealable as injunctions under 28 U.S.C. § 1292(a)(1) without the *Carson* showing. *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997). Since the district court's order expressly granted relief, it is immediately appealable notwithstanding the court's failure to label the relief as injunctive.[6]

In summary, the relief was equitable in nature and constitutes the grant of a preliminary injunction. This court has jurisdiction to hear the appeal under 28 U.S.C. § 1292(a)(1) and Lake's motion to dismiss is hereby **denied**.

### III. Injunctive Relief

Westar argues the grant of interim relief was erroneous on two main grounds. First, it argues the district court applied the wrong legal standard to evaluate the claim. Second, it argues the relief was impermissible because the district court failed to follow the procedures and make the determinations

---

[6]This eliminates the need to determine whether the heightened *Carson* showing is necessary when an interlocutory order has the practical effect of granting, rather than denying, a preliminary injunction. *See Saudi Basic Indus. v. Exxon Corp.*, 364 F.3d 106, 111 (3d Cir. 2004) (holding *Carson* inapplicable where an order had the practical effect of granting an injunction).

necessary to support the imposition of a preliminary injunction. We address both contentions within the context of the legal standards applicable to preliminary injunctions.

The grant of a preliminary injunction is reviewed for abuse of discretion. *Bhd. of Maintenance of Way Employees Div./IBT v. Union Pac. R.R.*, 460 F.3d 1277, 1282 (10th Cir. 2006). An abuse of discretion occurs when the district court commits an error of law or relies upon a clearly erroneous factual finding. *Id.* If the district court fails to analyze the factors necessary to justify a preliminary injunction, this court may do so if the record is sufficiently developed. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005).

Preliminary injunctions are extraordinary equitable remedies designed to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). For a district court to grant a preliminary injunction, it must comply with the procedural requirements of Rule 65 of the Federal Rules of Civil Procedure. Further, the moving party must demonstrate that four equitable factors weigh in favor of the injunction: (1) irreparable injury in the absence of the injunction; (2) the threatened injury to the moving party outweighs the harm to the opposing party resulting from the injunction; (3) the injunction is not adverse to the public interest; and (4) the moving party has a substantial likelihood of success on the merits. *Schrier*, 427 F.3d at 1258. Three types of preliminary injunctions are

disfavored: (1) preliminary injunctions altering the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions granting the moving party all the relief it could recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd on other grounds*, 546 U.S. 418 (2006).  These injunctions require strong showings of the likelihood of success on the merits and the balance of harms.  *Id.* at 976.

As discussed above, the district court concluded its order did not constitute a preliminary injunction.  As a consequence, the court did not weigh the equitable factors.  That failure was an error of law and, hence, an abuse of discretion.  Nonetheless, the record is sufficiently developed to allow for an analysis of the equitable factors on appeal.

The order issued by the district court was mandatory in nature.  It commanded Westar to immediately pay a specific sum of money to Lake and pay future amounts as they come due.  It therefore falls easily within the definition of a disfavored mandatory injunction.[7]  *See Schrier*, 427 F.3d at 1261.  As a consequence, a strong showing on the likelihood of success and the balance of harms is necessary to justify the mandatory injunction in this case.

---

[7]Since the injunction is mandatory, there is no need to inquire whether the injunction is also an alteration of the status quo or the preliminary grant of merits relief.

## A. Equitable factors

### 1. Irreparable Injury

Lake's right to advancement is a contractual right originating in Westar's Articles of Incorporation.[8] Advancement is a distinct right complementary to the right to indemnification. *Homestore, Inc. v. Tafeen* (*Homestore II*), 888 A.2d 204, 212 (Del. 2005). Indemnification and advancement work in tandem to encourage talented individuals to serve as corporate officers. *Homestore II*, 888 A.2d at 211. Corporate service entails the risk of civil and criminal liability, and corporations may be willing to assume the expenses of defending such suits to attract talented employees. *Id.* The right to indemnity, however, is often impossible to determine until the legal proceedings are finished. Absent advances, the officer himself must front the cost of defending the legal proceeding, significantly diminishing the attractiveness of indemnity. *Id.* Advancement addresses this problem by providing timely relief in the midst of litigation. *Homestore, Inc. v. Tafeen* (*Homestore I*), 886 A.2d 502, 505 (Del. 2005). If a corporation withholds advances, the right will be irretrievably lost at the conclusion of the litigation, because at that point the officer will only be entitled to indemnity. *See id.*

---

[8]Although this diversity case arises under Kansas law, the Kansas Corporate Code was modeled after the Delaware Corporate Code and the Kansas Supreme Court relies upon Delaware case law as persuasive authority in interpreting rights arising under the code. *Arctic Fin. Corp. v. OTR Exp., Inc.*, 38 P.3d 701, 703 (Kan. 2002).

In this case, Lake faces the possibility of a prison term if he is convicted in his third criminal trial. He is relying on advances to fund his legal defense. The district court's prospective remedy protects Lake's right to advances, and is thus crucial to Lake's defense of his liberty. Lake therefore meets the requirement of showing irreparable injury in the absence of the prospective relief granted by the district court.

The question, however, is different with respect to the retrospective relief granted by the district court. Unlike the prospective remedy, the retrospective remedy commanded Westar to pay accrued legal fees for services already rendered. It is more difficult to conclude such retrospective relief is necessary to prevent an irreparable injury, since the injury of nonpayment has already occurred.

In certain circumstances, retrospective relief might be necessary to forestall an irreparable injury. For example, if Hughes Hubbard were still Lake's lead counsel, their accrued debts might conceivably affect their future representation. We need not decide that issue, however, because Hughes Hubbard has relinquished the role of lead counsel for the third criminal trial. A preliminary injunction mandating payment of Hughes Hubbard's past invoices is not necessary to prevent irreparable harm to Lake given the firm's current diminished role on Lake's criminal defense team. Correspondingly, the nonpayment of the

Hite Fanning and Wilmer Hale invoices poses no threat of irreparable harm to Lake since each has terminated its representation.

The concurrence is entirely premised on an issue not before this court, i.e., Westar's ability to recover on remand. Westar cannot recover, according to the concurrence, because to do so would conflict with a provision in a draft version of the Restatement (Third) of Restitution and Unjust Enrichment. The draft, however, only addresses the question of whether an action for unjust enrichment can lie when the original judgment is invalid on a technicality but a legal duty to pay still exists. *See* Restatement (Third) of Restitution and Unjust Enrichment § 18 cmt. e (Tentative Draft No. 1, 2001) ("An invalid or erroneous judgment that gives effect to a *valid and enforceable* liability does not create unjust enrichment. . . ." (emphasis added)). The situation here is different. The defects in the order granting retrospective relief are not merely technical. While Westar unquestionably has a legal duty to pay some advancements to Lake, it contests the amount. At least with respect to the difference between the amount Westar believes in good faith it owes and the amount it was compelled to pay, it cannot be said at this stage of the litigation that Westar has a legal duty to pay. In other words, Westar may be able to argue that there is no underlying legal duty to pay and, therefore, it should be able to recover. Thus, even if the Restatement draft were controlling law, it still would not necessarily compel the result suggested by the concurrence. The more important point, however, is that regardless of

whether the application of a Restatement draft is appropriate, this is not the time

to opine on the matter. The issue is hypothetical, undefined by real facts, and the

adversary process has not been brought to bear.[9]

Because the retrospective remedy ordered in this case is not necessary to

forestall an irreparable injury, the district court abused its discretion in granting

that relief. The prospective remedy, however, is based on the prevention of an

irreparable injury, and thus its compliance with the remaining equitable factors

and compliance with Rule 65 must still be analyzed.

*2. Balance of Harms*

---

[9]The concurrence uses this hypothetical as a reason to suggest an alternative procedure for district courts. Like the underlying hypothetical, the analysis is neither moored to facts nor driven by the adversary process. The concurrence suggests that district courts fully resolve advancement claims and issue judgments under Rule 54(b) of the Federal Rules of Civil Procedure. Consideration of Rule 54(b) seems evident, but the actual determination to issue a 54(b) judgment is a discretionary decision for district courts faced with real facts and circumstances.

In its hypothetical case, the concurrence goes on to state that after entering judgment, the district court may choose to enter an order mandating immediate payment even after the losing party has posted a proper supersedeas bond. While the concurrence references the right to a stay of execution on a money judgment upon the posting of a supersedeas bond, it then nullifies that right in "the advancement context" by suggesting that the district court could effectively deny a stay by ordering immediate payment by the judgment debtor. Concurrence at p. 4. Whether such an implied exception to the right to a stay under Rule 62(d) of the Federal Rules of Civil Procedure exists should only be resolved in a true case or controversy with real facts and after the adversary process has been brought to bear.

The stakes for both parties are significant in this case. If the prospective relief is not issued, Lake faces a criminal trial without knowing whether his attorneys can continue representing him. Such uncertainty could have a direct impact on the quality of Lake's representation. Westar, on the other hand, has been ordered to pay significant sums for attorneys' fees it believes are unreasonable, and indeed contends it has already paid more than a reasonable amount to cover all of Lake's past and future legal expenses. Westar also argues it will be unable to recover overpayments, since Lake will likely be unable to repay any amount ruled unreasonable.

On balance, Lake has made the strong showing necessary to justify the issuance of a mandatory preliminary injunction. Lake's very liberty is at stake, and such a threatened harm outweighs the mere threat of monetary loss. Furthermore, Westar's threatened harm is not the loss of the entire sum of attorneys' fees it pays, but only that amount determined to be unreasonable. It contracted to accept that risk when it agreed to advance Lake's attorneys' fees. In this case, the district court's interim protest procedure diminishes that risk by allowing Westar to challenge any unreasonable invoice prior to payment. Under these circumstances, the threat to Lake's liberty strongly outweighs the threat of monetary loss to Westar.

*3. Public Interest*

The Kansas legislature has decided, as a matter of public policy, to allow corporations to advance legal fees to officers. Kan. Stat. Ann. § 17-6305(e). In so doing, it has endorsed the view that advancement, along with indemnity, is a worthwhile mechanism for attracting talented individuals to corporate service, notwithstanding the inevitable cost to corporations and the risk that some officers who are not ultimately entitled to indemnity will nonetheless receive advances. The public interest, as determined by the Kansas legislature, would therefore be served by the issuance of a preliminary injunction protecting Lake's right to advancement.

*4. Likelihood of Success on the Merits*

a. Reasonableness standard

Westar does not dispute that its contract with Lake requires it to advance attorneys' fees in some amount. Rather, it argues it is only obligated to pay reasonable attorneys' fees, as defined by Kansas law. On appeal, Lake agrees the advanced fees must be reasonable, but the two sides dispute the meaning of the term "reasonable" in the context of advances.

The district court, relying on Delaware cases interpreting corporate bylaws and advancement provisions, concluded the advancement contract was subject to an "implied reasonableness" term. It then proceeded to determine the reasonableness of payments made pursuant to a contractual advancement provision. The court concluded the reasonableness of contractually bargained-for

attorneys' fees is different from the reasonableness of attorneys' fees awarded as a result of statutory fee-shifting provisions. In making this distinction, the court did not cite to Kansas case law, but instead relied upon a Tenth Circuit case. *See United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1547-50 (10th Cir. 1987).[10] In *Western States*, this court decided that, when determining contractual attorneys' fees, the requested fees are to be upheld if they are not inequitable or unreasonable. *Id.* at 1549. Thus, even if a district court, in the first instance, would fix the fee at a different amount, the amount requested should be honored unless it would be inequitable or unreasonable to do so. *Id.* at 1549–50. In making its determination, the district court can still consider the usual factors used in computing reasonable attorneys' fees.[11] *Id.* at 1550.

---

[10]The *Western States* court determined the same standard applied under both federal and New Mexico state law, and so did not decide the question of whether to apply federal or state law. *United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1549 n.17 (10th Cir. 1987).

[11] The Kansas Rules of Professional Conduct provide a list of factors for evaluating the reasonableness of attorneys' fees. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the

(continued...)

In attacking this ruling, Westar argues that this "inequitable or unreasonable" approach is a federal standard that has never been adopted by a Kansas court. Westar claims Kansas courts apply a set of factors to determine the reasonableness of attorneys' fees, regardless of whether the attorneys' fees are awarded under a fee-shifting statute or a contract.

As an initial matter, the standards are not as different as Westar suggests. Under either standard, the district court analyzes the fee award using essentially the same factors. The chief difference appears to be who bears the burden of proof on the question of reasonableness. While the *Western States* court did not discuss the burden of proof, application of its ruling requires fee awards to be upheld unless the payor proves they are unreasonable or inequitable. Under Westar's preferred standard, the reasonableness of the fees must be proved by the party seeking the award.

The Kansas Supreme Court has applied the reasonableness factors of Rule 1.5 of the Kansas Rules of Professional Conduct to set fees both when statutes

_____

[11](...continued)
circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Kan. Rules of Prof'l Conduct R. 1.5(a).

-24-

allow for the recovery of reasonable attorneys' fees and when a contract provides for the recovery of attorneys' fees. *Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135 (Kan. 2006) (awarding attorneys' fees pursuant to insurance statute); *Davis v. Miller*, 7 P.3d 1223, 1236 (Kan. 2000) (awarding attorneys' fees pursuant to a contractual fee shifting provision); *City of Wichita v. B G Prods., Inc.*, 845 P.2d 649, 652 (Kan. 1993) (awarding attorneys' fees pursuant to condemnation statute). The Kansas Supreme Court has not, however, addressed the specific question of who bears the burden of proof when a contract provides for the advancement of attorneys' fees and the payor disputes their reasonableness. Since the Kansas Supreme Court has not ruled on this issue, a federal court sitting in diversity must predict what the Kansas Supreme Court would do if faced with the issue. *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir. 2008).

Courts in other states have considered how to assign the burden of proof when attorneys' fees are based on contract. Some courts, without explanation, have assigned the burden to the party seeking payment. *See, e.g., Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 428 (Ill. App. 1987); *Stonehenge Land Co. v. Beazer Homes Invs., L.L.C.*, 893 N.E.2d 855, 869 (Ohio App. 2008). When contracts allow for the recovery of attorneys' fees without expressly referencing reasonableness, other state courts have taken approaches similar to that in *Western States*. *See, e.g., McDowell Mountain Ranch Cmty. Ass'n, Inc. v.*

-25-

*Simons*, 165 P.3d 667, 672 (Ariz. App. 2007); *Storm Assocs., Inc. v. Baumgold*, 440 A.2d 306, 310 (Conn. 1982); *Carter v. Warren Five Cents Sav. Bank*, 564 N.E.2d 579, 583-84 (Mass. 1991). The latter courts reason that the parties have bargained for one side to pay the other side's actual attorneys' fees, and the contract should be enforced so long as the fees are not unreasonable or excessive. *Storm Assocs.*, 440 A.2d at 310; *Carter*, 564 N.E.2d at 583.

In this case, the indemnity provision in the Articles of Incorporation allows for the recovery of expenses, including attorneys' fees, "reasonably incurred." The Articles frame the advancement right as a right ancillary to the right to indemnification: "[t]he right to indemnification . . . shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition." The advancement provision, unlike the indemnity provision, does not further qualify "expenses." Because advancement is included within indemnity and the advancement provision does not define the term "expenses," a logical reading of the Articles would indicate that the word "expenses" in the advancement provision has the same meaning as it does in the indemnity provision. The indemnity provision defines expenses to include attorneys' fees "reasonably incurred." The advancement provision should therefore be read to have the same limitation.

Since the Articles only provide for the advancement of attorneys' fees reasonably incurred, the cases interpreting contractual fee-shifting provisions with

-26-

no reasonableness limitation, including *Western States*, are inapplicable. There is no reason to believe the Kansas Supreme Court would apply the *Western States* standard in a situation factually different from *Western States*. The Kansas Supreme Court would instead most likely require the party seeking payment to justify the reasonableness of the fees by reference to Rule 1.5 of the Kansas Rules of Professional Conduct.

While the district court erroneously adopted a standard which effectively shifted the burden of proof to Westar, the district court's order was not explicit regarding the burden of proof in the interim protest procedure. The order assigned Westar the initial burden of objecting to Lake's invoices, and required disputes to be submitted to the magistrate judge for resolution. Assigning Westar the initial burden of going forward with its objections was not erroneous, so long as Lake has the burden of proving the reasonableness of the fees before the magistrate judge. On remand, the district court should assign Lake the burden of proof on the issue of reasonableness in the interim protest proceedings before the magistrate judge.

b. Reasonableness of out-of-state attorneys' fees.

Westar attacks the district court determination that out-of-state attorneys' fees were not per se unreasonable given the complexity of the criminal trials. The court's ruling was sound. Kansas recognizes trial judges as experts on the topic of attorneys' fees. *Johnson*, 135 P.3d at 1135. The district court was well

acquainted with the difficulty of the case after presiding over two full trials. While local rates are one factor Kansas uses to determine the reasonableness of attorneys' fees under Rule 1.5 of the Kansas Rules of Professional Conduct, the difficulty of the case is another, and the district court did not abuse its discretion in refusing to foreclose the award of out-of-state rates.

### c. Set-off of past advances against future advances.

The district court's rejection of Westar's set-off argument was also warranted. Ceasing advances as a set-off for perceived past overpayments is, as the Delaware Supreme Court has decided, inappropriate before the right to indemnification has been determined. *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005). In other words, once advances have been made, they cannot be recouped until indemnification is adjudicated. *Id.* If corporations cannot make recoupment claims until the indemnification stage, they should not be permitted to achieve the same result by setting off current payments against past ones. Westar contracted for the risk that it might advance fees in excess of its indemnity obligation. To the extent it believes it has already advanced fees sufficient to cover the entirety of Lake's legal defense, Westar must save that argument for the indemnity proceeding.

### B. Rule 65

Because the district court's order constituted preliminary injunctive relief, it must comply with the relevant provisions of Rule 65 of the Federal Rules of

-28-

Civil Procedure. Those provisions include the notice requirement of Rule 65(a)(1).[12]

Westar complains it was not given adequate notice of the grant of injunctive relief, and therefore the order must be reversed. Rule 65(a)(1) states: "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Supreme Court has interpreted this provision to require a "fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 432 n.7 (1974).

Westar notes the order was granted after the district court requested supplemental briefing, with no opportunity for response, on how it should proceed with Lake facing a third criminal trial. In Lake's supplemental brief, he explicitly requested equitable relief for the first time. Westar complains it was unable to respond to this brief and thus unable to present its case opposing equitable relief.

Westar was, however, fairly apprised of the likelihood of equitable relief. The district court's order requesting supplemental briefing was solely directed to the issue of "Westar's liability with respect to future advancement of legal fees

_____

[12]Westar asked the district court to impose a security pursuant to Rule 65(c), but it has not appealed the court's denial of that request and so we do not address that issue. As a consequence, it is not necessary for this court to consider whether the amount to be secured is the amount claimed to be unreasonable or the total amount ordered paid.

and expenses in the upcoming third criminal trial." Westar itself suggested the court grant interim relief at prevailing local rates. While the district court decided to grant interim relief at a higher rate than Westar requested, Westar can hardly complain it lacked notice of the possibility of an interim remedy.[13]

## IV. Conclusion

The district court's order constituted preliminary injunctive relief and was thus immediately appealable. Therefore, Lake's motion to dismiss is **denied.** The district court abused its discretion in ordering the retrospective remedy in the absence of proof of irreparable harm. The prospective remedy requiring Westar to advance future attorneys' fees in the face of irreparable harm, however, was not an abuse of discretion. In granting interim relief to Lake, the district court erred in assigning the burden of proving reasonableness to Westar. On remand, the district court must assign the burden of proving the reasonableness of requests for advances to Lake.

The district court's orders granting and modifying interim relief are hereby **affirmed in part** and **reversed in part**. The matter is **remanded** for further proceedings consistent with this opinion.

---

[13]Because Westar had sufficient notice prior to the grant of the preliminary injunction, there is no need to address Lake's alternative argument that Westar's motions objecting to the preliminary remedy cured any notice defect.

-30-

07-3219, 07-3280 - *Westar Energy, Inc. v. Lake*

**HARTZ**, Circuit Judge, concurring:

I join Judge Murphy's opinion. I write separately to note a peculiar result of our disposition and to suggest what appears to me to be a superior way for district courts to handle advancement requests in the future. To assure that both parties to an advancement dispute can obtain timely appellate resolution of the merits, district courts should consider entering orders under Fed. R. Civ. P. 54(b) when necessary for decisions on retrospective relief to be final and appealable.

The peculiar result in this appeal is that Westar's victory with respect to retrospective relief (we are setting aside the order to pay a portion of attorney fees already incurred by Lake) is probably an empty one. The victory scarcely improves its situation. Under threat of contempt, Westar has already paid what was ordered,[1] and I see no clear avenue for Westar to reclaim that money.

Ordinarily, when a judgment is reversed, the prevailing party has a claim for unjust enrichment to recover what it transferred to the opposing party under that judgment. *See* Restatement (Third) of Restitution and Unjust Enrichment

---

[1]When Westar did not promptly pay as ordered, Lake moved in district court for an order to show cause why Westar was not in contempt. Westar then moved in this court for a stay of the order to pay, offering to post a bond or other adequate security required by the court. We denied the stay on the ground that Westar had not shown all the factors required by 10th Cir. R. 8.1. *See* Order, Oct. 16, 2007.

§ 18 (Tentative Draft No. 1, 2001) (Tentative Restatement)[2].  The trial or appellate court may order the recovery.  *See id.* at cmt. b.  But the ground for the reversal can affect whether recovery is proper or likely.  The ground for reversal may be a procedural matter that has nothing to do with whether the party that prevailed on appeal owes a lawful debt to the opposing party.  If the party that prevailed on appeal actually owes the money set forth in the (reversed) judgment, then one could hardly say that the opposing party had been "unjustly enriched" by payment of the judgment amount.  As stated in the Tentative Restatement, "An invalid or erroneous judgment that gives effect to a valid and enforceable liability does not create unjust enrichment; the transfer finds a sufficient legal basis in the underlying liability, notwithstanding the defective judgment."  *Id.* cmt. e.

We may well have that situation here.  Our reversal of the preliminary injunction is on the ground that Lake failed to show that payment was necessary to prevent irreparable injury.  Our ruling says nothing about whether Westar had a legal obligation to advance to Lake a portion of the attorney fees he has already paid.  Westar can recover in restitution what it paid Lake (as ordered by the district court) only if some future proceeding determines that Westar in fact did

---

[2]The American Law Institute's Restitution project has not been completed, so language in the Tentative Draft may be revised.  But Tentative Draft No. 1 was presented at the 2001 membership meeting and approved subject to "the usual editorial prerogative" of the Institute's Council and the discussion at the annual meeting.  78th Ann. Meeting, A.L.I. Proc., May 15, 2001, at 212.  There were no comments by the members regarding § 18.  *See id.* at 207.

not owe Lake an advance of that money. (I am not addressing here what Westar could recover if, at the end of Lake's various trials, it is apparent that he is not entitled to indemnification and must refund all the advances he received, as required by the contractual conditions of the advancement.) It would seem unlikely that the district court in this case would determine that Westar has made such a showing. After all, it has already ruled to the contrary and we have said nothing that would undermine its confidence in that prior ruling. Perhaps Westar could bring a restitution action in some other court; but the reality is that after any necessary removal or transfer of the case, the action would end up before the same judge as in this case; and even if it came before another judge, that judge is likely to show deference to the ruling by the judge in this case, who is the one most familiar with the performance of Lake's attorneys.

This peculiarity in the present case—that Westar prevails on appeal but, as a practical matter, is no better off—results from the presence in the district-court case of causes of action in addition to Lake's claim for the advancement of attorney fees that have already been incurred. These other causes of action have not been resolved, so the district court has yet to enter a final judgment. The situation would be different if Lake's claim for advancement of already incurred fees were the only claim before the district court. In that event, the district court's decision that Westar should have advanced $X to Lake would be (once put

in proper form) a final, appealable judgment.[3] Thus, once the district court ruled on advancement, Westar could appeal this final decision on the merits to our court. If Westar had paid on a judgment that advancement was due from it to Lake, reversal by this court would entitle it to restitution from Lake of what it had overpaid.

This would be the case even if the district court, in addition to entering judgment that advancement was due, also entered an order compelling Westar to pay Lake immediately. Before getting to that issue, though, I should explain why such an order might be entered. An order to pay a money judgment forthwith is not something we see every day. But it could make sense in the advancement context. After all, if Lake had only a money judgment, Westar would have the right to stay execution on the judgment by filing a supersedeas bond. *See* Fed. R. Civ. P. 62(d); *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S. Ct. 1 (1966) (Mem. Op. of Harlan, J.) (stay of money judgment is matter of right if supersedeas bond is posted); 12 James Wm. Moore et al., Moore's Federal Practice § 62.03[1] (3d ed. 2008) (same); 11 Charles A. Wright, et al., Federal Practice and Procedure § 2905 at 520 (2d ed. 1995) (same). Such

_____

[3]Perhaps it may seem that the decision on advancement would be only interlocutory because Westar may be able to recover any advancements at the conclusion of Lake's litigation when Lake's claim for indemnity is resolved. But Lake's advancement claim is a distinct cause of action, not an interlocutory matter in an action for indemnity. Advancement and indemnity are separate contractual rights owed to Lake; the duty to advance funds is not dependent on any showing of likelihood that indemnity will later be required.

-4-

a bond is usually adequate to protect the interests of the judgment creditor. In the advancement context, however, a stay could render the judgment useless even if the corporation posted a bond requiring payment to the officer if the corporation lost the appeal. The purpose of advancement is to enable corporate officers to obtain capable counsel to defend civil and criminal claims against them; counsel may be willing to represent an officer only if payment of fees is prompt and unconditional, and advancement can ensure such payment. Staying a judgment for advancement would defeat this purpose. Indeed, by the time the appeal is resolved, the advancement issue could be mooted by conclusion of the litigation for which the officer needed the advance. An officer who lost the litigation would likely be required to repay all advancements. In that event, even if the officer prevailed on the advancement appeal, there would be no benefit from an appeal bond: any payment to the officer from the bond would be deemed an advancement, and any advancement would need to be repaid to the corporation. As a result, the officer's attorney would not be paid. The attorney would, in essence, have been working on a contingent-fee basis (getting paid only if the client succeeded in the litigation), thereby defeating the purpose of having a right to advancement rather than only a right to indemnity. Thus, an injunction ordering immediate payment could be appropriate in an advancement case. Although the district court or this court might exercise its discretion to stay the

order upon filing a bond, the corporation would not have an unqualified right to post a bond to avoid immediate payment. *See* Fed. R. Civ. P. 62(c).

Returning to the principal point, entry of an order requiring immediate payment of a final judgment that advancement is due would not impair the corporation's ability to obtain an appellate ruling on the merits. Even though the order requiring payment might be disposed of on appeal on a nonmerits ground (such as failure to show irreparable injury), we would still need to review the judgment on the advancement claim. If we held that advancement was not required, the corporation could obtain restitution, subject, of course, to ordinary defenses, *see* Tentative Restatement § 18. To me, this is a good result. The corporation would have the ability to protect its rights without delaying an advancement to the officer that the district court ruled to be necessary.

This same result can be obtained even if the case before the district court, as here, includes claims other than advancement for previously incurred attorney fees. All that is necessary is for the district court, upon deciding the advancement issue, to enter a final judgment on that issue under Fed. R. Civ. P. 54(b). Such a final judgment is proper despite the presence of unresolved claims if the district court "determines that there is no just reason for delay." *Id.* I would think that such a determination would ordinarily be proper for an advancement claim. Not only would use of Rule 54(b) help the corporation that wishes to challenge an

-6-

advancement ruling, it could also be critical to a corporate officer if the ruling is to deny an advancement.

This case presents challenging procedural issues. I can hardly fault the district court for how it proceeded in a case of first impression in this circuit. In the future, however, I would urge district courts to consider using Rule 54(b) to create final judgments when advancement claims for previously incurred attorney fees are joined with other matters.