Lauriat, Peter M., J.
Benson Caswell (“Caswell”) brought this action against the Massachusetts Development Finance Agency (“MDFA”), alleging breach of contract in connection with his employment agreement with Massachusetts Health and Educational Facilities Authority (“HEFA"). Before the court is the MDFA’s motion to dismiss Counts I and II of Caswell’s complaint. For the following reasons, the motion is denied.
BACKGROUND
The court takes as true the following facts set forth in the Complaint. See Marshall v. Stratus Pharm., Inc., 51 Mass.App.Ct. 667, 670-71 (2001). Chapter 614 of the Acts of 1968 (“Chapter 614”) created HEFA, a “quasi-public” authority that helped provide tax-exempt financing to hospitals and educational facilities. Section 4(a) of Chapter 614 provided that HEFA consists of a nine-member board appointed by the governor for a term of seven years; the governor could remove any member for cause, including “misfeasance, malfeasance or willful neglect of duty.” Section 4(b) gave the board the authority to “appoint an executive director and assistant executive director, who shall not be members of the authority, who shall serve at the pleasure of the authority. They shall receive such compensation as shall be fixed by the authority.”
In March 2002, HEFA’s board appointed Caswell as the Executive Director of HEFA. An employment agreement (the “Agreement”) dated April 15, 2002, provided for an initial term of three years, to be extended each year for one additional year based on a satisfactory review of Caswell’s performance (the “term”), a salary of $155,000 plus benefits, and a discretionary bonus. The Agreement also provided that, in the event Caswell was terminated without cause, or his position eliminated or consolidated, he was entitled to:
a severance benefit payment equal in amount to (a) one year’s base salary (at the then current level) plus the estimated cost, as determined by the Authority, of one year’s health and other insurance benefits provided Caswell at the time of this termination (the “Base Severance Benefit”), plus (b) an additional one-sixth of the Base Severance Benefit for each completed year of service; provided, how *317 ever, that in no event shall Caswell’s severance benefit exceed three full years of the Base Severance Benefit.
Caswell asserts that he specifically negotiated for this provision because not only was he aware of the potential for quasi-public authorities to be consolidated with other authorities, but also, while researching HEFA prior to accepting his position, he learned of past attempts to merge HEFA and the MDFA.
In subsequent years, Caswell received satisfactory or better performance reviews; accordingly his term of employment was extended by one year in 2003, 2004 and 2005. On April 15, 2005, Caswell and HEFA executed an Amended and Restated Employment Agreement (“First Amended Agreement”) which contained the same provision for extending Caswell’s term of employment as the initial agreement as long as neither party terminated the agreement. His salary increased to $200,000, plus benefits and a discretionary bonus. The terms of his severance remained the same.
On April 16, 2006, Caswell and HEFA executed a Second Amended and Restated Agreement (“Second Amended Agreement”), the provisions of which were substantially the same as those of the First Amended Agreement. In addition to his base salary and bonus, Caswell received one hundred percent paid medical and dental benefits, one hundred percent paid short-term disability, long-term disability and long-term care benefits, life insurance, transit pass, car allowance and various additional benefits. Like its predecessors, the Second Amended Agreement provided that Caswell would receive severance upon termination of the agreement without cause, or if his position was eliminated or consolidated. In addition, the Second Amended Agreement provided that Caswell would receive health insurance coverage under COBRA for the same period covered by his severance. Specifically, Section 7 reads, in relevant part:
If terminated by the Authority pursuant to Section 6(d) [without cause] before the expiration of the term of this Agreement, or upon the elimination or consolidation of the position of Executive Director such that Caswell no longer serves in such position prior to the expiration of the Term of this Agreement, Caswell shall receive, in addition to the Accrued Obligations: (a) a lump-sum severance benefit payment on the date of early termination in an amount equal to (i) the annual Base Salary (at the then cunrent level), plus (ii) an additional one-sixth of the annual Base Salary for each completed year of service, counted from the start of Caswell’s employment with the Authority on April 15, 2002, provided, however, that in no event shall the amount of this severance benefit payment exceed three full years of the annual Base Salary; and (b) subject to Caswell’s proper election under COBRA to continue on the Authority’s health coverage following termination, payment by the Authority of the cost to continue Caswell’s health coverage pursuant to COBRA for the period equal to one year, plus an additional two months for each completed year of service including the year of termination, counted from the start of Caswell’s employment with the Authority on April 15, 2002 (the “Continuation Period”); provided, however, that in no event shall the Continuation Period exceed three full years . . .
Caswell continued to receive positive performance reviews and his term of employment was therefore extended under the Agreement. As of April 15, 2010, his term was not due to expire until April 14, 2013. Caswell’s salary was increased in May 2008 to $225,000 and he received bonuses of $22,500 from 2008 through the year ending April 2010.
Caswell’s concern about a possible merger was well founded. In August 2010, Governor Patrick signed into law Chapter 240 of the Acts of 2010 (“Chapter 240”), also known as the Economic Development Reorganization Act, which merged HEFA into the MDFA effective October 1, 2010. Section 162 repealed §4 of Chapter 614. Section 109(b) provided that all employees of HEFA were to be merged into the MDFA as follows:
The employees of each transferor agency, including those who immediately before the effective date of this act hold permanent appointment in positions classified under chapter 31 of the General Laws or have tenure in their positions as provided by section 9A of chapter 30 of the General Laws or do not hold such tenure, or hold confidential positions, are hereby transferred to the respective transferee agency, without interruption of service, without impairment of seniority, retirement or other rights of the employee, and without reduction in compensation or salary grade, notwithstanding any change in title or duties resulting from such reorganization, and without loss of accrued rights to holidays, sick leave, vacation and benefits.
Chapter 240, § 190(f) also provided that “(a]ll duly existing contracts, leases, assets and obligations of each transferor agency shall continue in effect but shall be assumed by the respective transferee agency. No existing right or remedy of any character shall be lost, impaired or affected by this act.” Section 188(b) provided that “[a]ll duly existing contracts, leases, trusts, or obligations of the Authority that are in force immediately before the effective date of the dissolution of the Authority shall be deemed to be the obligations of the Agency.” Thus, all of HEFA outstanding con tracts and liabilities were assumed by the MDFA and all of HEFA’s employees were merged into the MDFA.
On September 28, 2010, the MDFA informed Caswell that, due to the merger, his position as Executive Director of HEFA was eliminated, and he would not be awarded the severance package as provided in *318 the Second Amended Agreement. Caswell filed this action on October 20, 2010, asserting claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and a violation of the Massachusetts Public Records Act (Count III). He takes the position that Chapter 240’s abolition of his position constitutes an “elimination or consolidation of the position of Executive Director such that Caswell no longer serves in such position prior to the expiration of the Term,” thus triggering the MDFA’s obligation to provide him with a severance package under Section 7 of the Second Amended Agreement. The MDFA has now moved to dismiss Counts I and II, pursuant to Mass.R.Civ.P. 12(b)(6), for failure to state a claim. The thrust of its argument is that the employment agreements are null and void because they contravene the legislature’s intent and exceed the authority provided by HEFA’s Enabling Act.
DISCUSSION
In order to withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to shofw] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
The MDFA argues that the severance provision of Caswell’s employment agreement is unenforceable, since §4(b) of Chapter 614 provides that the executive director “shall serve at the pleasure of the authority.” It contends that the words “at the pleasure of’ indicate the Legislature’s intent that Caswell’s employment was “at will.” See, e.g., Appley v. Locke, 396 Mass. 540, 543 (1986); see also Corrigan v. School Committee of New Bedford, 250 Mass. 334, 338-39 (1924); Welch v. Contributory Retirement Appeal Bd., 343 Mass. 502, 507 (1962). The agreements, their argument goes, impermissibly transform an “at will” employment into one for a defined term.
Caswell, for his part, asserts that the elimination of his position did not affect the severance terms of the agreements. For this proposition he relies primarily on Carter v. Warren Five Cents Savs. Bank, 409 Mass. 73, 75-76 (1991). In Carter, the Supreme Judicial Court addressed similar wording in G.L.c. 172, §14, which provides that officers of banks “shall hold their respective offices during the pleasure of the directors.” Id. at 75. Carter and his employer /bank had negotiated an agreement that provided severance in the event Carter resigned if, as a result of a merger, a change in his responsibilities constituted a demotion. When these events came to pass, the bank refused to pay Carter’s severance. Id. at 76. The question before the court was whether, under the “during the pleasure of’ language the bank was “forbidden from offering enforceable ‘golden parachutes’ to its officers.” Id.
The court distinguished between the bank’s right to terminate an employee at will and a severance provision in an employment agreement. Id. at 75-76. It noted the general rule that “no inhibition on a board’s exercise of its pleasure to discharge an officer should be tolerated and that an obligation to pay future salary on a termination of an officer’s employment would be such an inhibition.” Id. at 75. However, the court then held that “We are unwilling to read into a statute that says nothing explicitly about executive compensation a rule that invalidates an arm’s-length transaction entered into to benefit the bank, by encouraging a key executive to stay in its employ in the face of the uncertain consequences of a possible merger of the employer-bank into another entity.” Id. at 76. See also Schmidt v. Park Avenue Bank, N.A., 558 N.Y.S.2d 779, 780 (1990) (applying the cognate federal statute). Therefore, although the “at the pleasure of’ language allows an employer to terminate an employ and stop paying salary, it does not affect a separate severance provision negotiated by the parties as part of an employee agreement.
Here, Caswell does not challenge the MDFA’s decision to eliminate his position, thereby terminating his employment. Rather, he challenges the MDFA’s failure to honor the severance package that the parties negotiated under his employment contract. As he also points out, Chapter 614, §4(b) explicitly gives the authority the power to fix the compensation of the executive director. He has therefore set forth sufficient facts, at this early stage of the proceedings, to support an entitlement to relief with respect to Count I. Whether the agreements in question were valid contracts is best addressed after further discovery.[1]
Caswell’s claim for a breach of the implied covenant of good faith and fair dealing is, effectively, a claim of disparate treatment. He alleges that executives in other governmental bodies terminated around the same time received severance, whereas the MDFA denied his severance package in retaliation for certain conduct with respect to the appointment of an assistant executive director. Accepting as true the allegations of the complaint, the court concludes that Caswell has alleged sufficient facts to withstand the MDFA’s motion to dismiss Count II.
ORDER
For the forgoing reasons, the Defendant Massachusetts Development Finance Agency’s Motion to Dismiss Counts I and II of Plaintiff s Complaint is DENIED.

To the extent that the MDFA argues that the Legislature *319 eliminated the terms of the agreements when it abolished Caswell’s position, the court notes that § 188(b) of Chapter 240 provides that all HEFA’s existing contracts “shall be deemed the obligations of the Agency.”