FILED
United States Court of Appeals
Tenth Circuit

**March 10, 2008**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

PORT CITY PROPERTIES, an Oklahoma
corporation d/b/a Hodges Warehouse;
ALPINE PROPERTIES, LLC, an Oklahoma
limited liability company,

      Plaintiffs-Appellants,

v.

UNION PACIFIC RAILROAD COMPANY,
a corporation,

      Defendant-Appellee.

No. 06-5187

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 06-CV-321-JHP-FHM)**

---

Kenneth L. Brune of Brune Law Firm, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Christopher D. Wolek (Tom L. Armstrong, Robert D. Hart, and Laura L. Eakens
with him on the brief) of Gibbs Armstrong Borochoff Mullican & Hart, P.C.,
Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Port City Properties, Inc. d/b/a Hodges Warehouse and Alpine Properties, LLC (collectively "Hodges") appeal the district court's denial of their request for a preliminary injunction against Union Pacific Railroad Company ("Union Pacific"). We affirm.

**I**

Hodges owns and operates a commercial public warehouse in an industrial park located in Tulsa, Oklahoma. An industrial rail track is routed through the park with rail service provided to Hodges' warehouse via an additional private track owned by Hodges. After Union Pacific determined the industrial rail track servicing the warehouse was no longer safe, it ceased rail service thereon. Hodges brought this action against Union Pacific, alleging breach of contract, tortious interference with business relations, and defamation. In pursuing those claims, Hodges moved for a preliminary injunction to enjoin Union Pacific from ceasing rail operations servicing his warehouse and from informing others that Hodges could not receive shipments by rail. Hodges also moved for an order directing Union Pacific to maintain and operate the line.

The matter was referred to a magistrate judge who held an evidentiary hearing on the motion for preliminary injunction. The judge issued a Report and Recommendation determining that all of Hodges' claims, except for the breach of contract claim, were preempted by the Interstate Commerce Commission

Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.*  The judge also recommended that the district court deny Hodges' motion for preliminary injunction based on the breach of contract claim.  The district court adopted the Report and Recommendation and affirmed.

## II

We review the district court's determination on jurisdiction de novo. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1241 (10th Cir. 2001).  We review the district court's denial of a preliminary injunction for abuse of discretion.  *Utah Licensed Beverages Ass'n v. Leavitt*, 256 F.3d 1061, 1065 (10th Cir. 2001).

### A.    Jurisdiction

Section 10501(b) of the ICCTA broadly grants jurisdiction to the Surface Transportation Board ("STB") over "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one state . . . ."  49 U.S.C. § 10501(b)(2).  This broad jurisdictional grant is coupled with an express preemption clause mandating that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State Law."  49 U.S.C. § 10501(b).  As a consequence,

jurisdiction over "spur, industrial, team, switching or side tracks, or facilities" rests solely with the STB. 49 U.S.C. § 10501(b)(2); *see also United Transp. Union Ill.-Legis. Bd. v. Surface Transp. Bd.*, 183 F.3d 606, 612 (7th Cir. 1999). In 49 U.S.C. § 10906, however, Congress provided that entities may construct, transfer or operate spur or industrial tracks without STB approval. Hodges contends § 10906's withdrawal of authority from the STB creates a jurisdictional void, thereby permitting jurisdiction over state causes of action related to such tracks.

To the contrary, § 10906 has been interpreted to preclude *all* regulation of industrial or spur tracks: "When sections 10906 and 10501(b)(2) are read together, it is clear that Congress intended to remove [STB] authority over the entry and exit of these auxiliary tracks, while still preempting state jurisdiction over them, leaving the construction and disposition of [them] entirely to railroad management." *Cities of Auburn and Kent*, 2 S.T.B. 330, 1997 WL 362017 at *7 (1997); *see also* Report on ICCTA, H.R. Rep. No. 104-422, 104th Cong., 1st. Sess. 167 (1995) (explaining that § 10501(b)(2) was added "[i]n light of the exclusive Federal authority over auxiliary tracks and facilities . . . ."). In short, read together, § 10501 and § 10906 completely preempt Hodges' state law tort claims with respect to spur or industrial tracks. *See, e.g., PCI Transp. v. Fort Worth & Western R.R.*, 418 F.3d 535, 545 (5th Cir. 2005) (ICCTA completely preempts non-contractual claims); *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d

-4-

439, 444 (5th Cir. 2001) (ICCTA preempts claims of negligence and negligence per se with respect to railroad's alleged road blockages); *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 297 F.Supp.2d 326, 334 (D. Me. 2003) (state law claims preempted by ICCTA); *South Dakota ex rel. South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F.Supp.2d 919, 934-35 (D.S.D. 2003) (state law claims for punitive damages and tortious interference preempted by ICCTA); *Guckenberg v. Wis. Cent. Ltd.*, 178 F.Supp.2d 954, 958 (E.D. Wis. 2001) (state law nuisance claim preempted with respect to railway traffic issue); *Rushing v. Kan. City S. Ry. Co.*, 194 F.Supp.2d 493, 500-01 (S.D. Miss. 2001) (ICCTA preempts state law nuisance and negligence claims intended to interfere with railroad's operation of switchyard).

In an attempt to avoid this result, Hodges seems to argue the track at issue was not a spur or industrial track, but rather a regular railroad line subject to STB jurisdiction. Factors used to determine whether a section of track is an extension of a regular railroad line, as opposed to a "spur" or "industrial" track, include whether the railroad maintains a train schedule or regular service over the track; furnishes express, passenger, or mail service; maintains buildings, loading platforms, or an agent along the trackage; and who completes the bills of lading. *See Chicago, M., St. P. & P.R. Co. v. Chicago & E.I.R. Co.*, 198 F.2d 8, 12 (7th Cir. 1952). It is also relevant whether the track has been or is to be used for anything other than industrial delivery, *see La. & Ark. Ry. Co. v. Mo. Pac. R.R.*

-5-

*Co.*, 288 F.Supp. 320, 323 (D.C. La. 1968), the length of the track, whether the track serves only a single customer, and whether the customer requested the carrier to provide service. *See Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 612 (3d Cir. 1991).

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). Hodges presented no evidence that the track was a main line within the meaning of the cases cited above. The only evidence that the track was something other than a spur or industrial track was the testimony of Hodges' owner, Dennis Kriz, who referred to it as a "lead track," a term we do not find in the statute. The evidence in the record establishes that the Katy Industrial Park was created in 1956. The Missouri-Kansas-Texas Railroad Company (the predecessor to Union Pacific) extended railroad tracks into the industrial park to service businesses located there. In 1966, the railroad contracted with Hodges to extend its "spur track" to connect with a "spur track" Hodges agreed to build on its property. Aplt. App. at 218 (1966 Agreement). In 1999, when part of Union Pacific's "industrial lead track" in the Katy Industrial Park needed rehabilitation, Hodges agreed to pay $62,000 to Union Pacific for the materials and work necessary for the railroad to repair the line. *Id.* at 196 (1999 Agreement). These documents reference the track at issue here and support the district court's conclusion that the track was an industrial or spur track.

Hodges also argues against preemption on the grounds that Union Pacific was required to obtain prior permission from the STB for abandonment of its service to the track pursuant to 49 U.S.C. § 10903(a)(1)(A) (rail carrier must file application with STB if it intends to "abandon any part of its railroad lines"). As discussed previously, the STB has no authority over the regulation of spur and industrial tracks as opposed to main railroad lines. That authority is left entirely to railroad management who may contract services as they see fit. As a result, there was no requirement that Union Pacific request authorization for abandonment from the STB.

In sum, Congress granted exclusive jurisdiction to the STB over the construction, operation, and abandonment of spur or industrial lines, thereby precluding state regulation. Congress then specifically withdrew regulation of such lines from the STB, leaving their management solely to the respective railroads.

## B.    Preliminary Injunctive Relief Based on Breach of Contract

To obtain a preliminary injunction based on a contract, Hodges was required to meet the test established in this circuit:

> It is well established that in order to obtain a preliminary injunction, the moving party must establish four factors: (1) it will suffer irreparable harm if the injunction is not granted, (2) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case. In examining these factors, courts have consistently noted that

because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations and internal quotations omitted). "Likewise, because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.* (quotations and citations omitted).

A showing of irreparable harm requires that the injury "be both certain and great, . . . and that it must not be merely serious or substantial." *Prairie Band*, 253 F.3d at 1250 (internal citation and quotations omitted). The district court determined that Hodges failed to show irreparable harm. Having reviewed the record, we agree.[1] Mr. Kriz testified that the rail cargo he receives is a "small part of [his] business." Aplt. App. at 133. Further, he noted that loss of rail service was "not going to put [him] out of business, but it definitely [was] costing [him] money." *Id.* at 136. Mr. Kriz also admitted that Union Pacific made alternative arrangements for delivery of Hodges products and paid for them to be

---

[1]Hodges asserts the district court abused its discretion by limiting the scope of evidence it would consider in making its determination on Hodges' right to injunctive relief. But Hodges did not raise this issue in his objection to the Report and Recommendation and it was therefore waived. *See United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) ( "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

unloaded at another location a mile away. As the district court explained, Hodges' loss of business can be compensated in money damages. Economic loss "usually does not, in and of itself, constitute irreparable harm. . . ." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citing 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2948.1, at 152-53 (2d. ed. 1995). Hodges has offered no evidence demonstrating the type of loss that satisfies the element of irreparable harm.

In addition, the district court held that Hodges failed to show a likelihood of success on the merits because it offered no evidence of a contract requiring Union Pacific to provide rail service to it. Hodges contends on appeal that the district court erroneously relied on the 1966 Agreement between the parties in making this determination. Hodges claims this is not the contract requiring "rail service between Union Pacific and Hodges." Aplt. Br. at 21. However, the 1999 Agreement, the document Hodges apparently relies on, was specifically referenced by the court. As the court concluded, while the 1999 Agreement "may support a subjective expectation of continued rail service for some period of time after October 1, 1999, nothing within the [1999] Agreement obligates [Union Pacific] to provide continued rail service to [Hodges'] warehouse for any period of time." Aplt. App. at 77. In fact, that agreement provided for termination upon ten days' notice. There is no contract for rail service by Union Pacific to Hodges' warehouse. Accordingly, Hodges cannot show a likelihood of success on the

merits.[2]  *See PCI Transp., Inc.*, 418 F.3d at 545 (plaintiff cannot show likelihood of success on contractual claim without evidence of contract).

Without a showing of either of these two key preliminary injunction factors, Hodges cannot succeed on its contention that the district court abused its discretion when it determined Hodges was not entitled to a preliminary injunction.  The district court also correctly held that Hodges' state law tort claims were completely preempted by the relevant provisions of the ICCTA.

We **AFFIRM**.

---

[2]In his argument on likelihood of success, Hodges also contends Union Pacific is a common carrier and is thereby required to provide rail service to Hodges' warehouse.  Hodges did not specifically raise the issue of common carrier status in his objection to the Report and Recommendation, and the issue is therefore waived. *See One Parcel of Real Property*, 73 F.3d at 1060.