**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MELVINA RICHARDS,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

     Defendant - Appellee.

No. 15-6121
(D.C. No. 5:14-CV-00527-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

Melvina Richards appeals from a district court order affirming the

Commissioner's denial of her application for Social Security Disability and

Supplemental Security Income benefits.  Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Richards applied for benefits, alleging disability beginning in November 2010. At step two of the sequential evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009), the administrative law judge ("ALJ") found that she has the severe impairments of degenerative disc disease; chronic obstructive pulmonary disease; learning disorder, not otherwise specified; major depressive disorder, recurrent, moderate; bipolar disorder; and post-traumatic stress disorder ("PTSD"). At step three, the ALJ found that Ms. Richards' impairments do not meet or medically equal the Listing of Impairments, whether alone or in combination.

The ALJ next determined that Ms. Richards has the residual functional capacity ("RFC"):

> to perform "light work," . . . except the claimant can only: occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid exposure concentrated to irritants, such as dusts, fumes, smoke, gases, and poor ventilation; understand, remember, and carry out only simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; and have only incidental, superficial work-related type contact with co-workers and supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed.

Aplt. App., Vol. I at 43. In determining Ms. Richards' RFC, the ALJ found that the medical and non-medical evidence was not fully consistent with her statements regarding the intensity, persistence, and limiting effects of her symptoms. He therefore found her only partially credible.

The ALJ also placed great weight on the opinions of the state agency consultants, indicating that their "opinions comport with the partially credible

2

testimony of the claimant and the objective evidence of record." *Id.* at 46. He found that no medical provider, including her treating physician, had concluded that Ms. Richards was disabled from work activity on a regular and continuing basis. Nor did Ms. Richards "present persuasive or credible evidence that would contradict the physical or mental capacity evaluations of the State agency consultants." *Id.*

At step four, the ALJ concluded that, with her RFC, Ms. Richards is unable to perform her past relevant work. But at step five, he found that jobs exist in significant numbers in the national economy that she can perform, and therefore concluded that Ms. Richards is not disabled. At both of these steps, the ALJ relied on the testimony of a vocational expert ("VE").

The Appeals Council denied Ms. Richards' request for review, and the district court affirmed the Commissioner's decision, adopting the Report and Recommendation ("R&R") of the magistrate judge.

## II. **DISCUSSION**

Ms. Richards' contentions challenge the ALJ's RFC determination and his holding at step five that she is not disabled. She argues the ALJ erred by failing to include limitations in her RFC concerning her learning disability and her urinary incontinence. She also argues the RFC's simple-work limitations do not address all of her mental impairments. And she contends the ALJ failed to do a function-by-function assessment of her impairments. Regarding the ALJ's analysis of the evidence, Ms. Richards asserts that he erred in failing to discuss her Global Assessment of Functioning ("GAF") scores and improperly assessing her credibility.

3

As a result of these alleged RFC errors, she contends that the hypothetical question the ALJ posed to the VE also was flawed and that the VE's testimony therefore fails to provide substantial evidence for the ALJ's conclusion at step five that she is not disabled.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citation and internal quotation marks omitted).

A. *Issues Not Raised in the District Court*

Ms. Richards contends that the ALJ erred by not including any limitation in her RFC related to her urinary incontinence and in failing to do a function-by-function assessment of her impairments. She also argues that the ALJ did not properly review the opinions of the state agency doctors, to which the ALJ gave great weight.

Ms. Richards did not raise any of these issues in the district court. "An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) (internal quotation marks omitted). We reverse based on a new issue raised for the first time on appeal only if the appellant satisfies the plain error standard of review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). "To show plain error, a party must establish the presence of (1) error, (2) that is

4

plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1128. Ms. Richards makes no effort to show plain error as to these issues. This failure "marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.

B. *Lack of an RFC Limitation Related to Learning Disability*

Ms. Richards asserts her RFC improperly omits any limitation based on her learning disorder, which the ALJ found to be a severe impairment. She points to evidence that her reading ability is at a first-grade level, and she contends that the RFC must therefore include a corresponding limitation.

Ms. Richards first argues the ALJ failed to make any finding regarding her ability to speak, read, and understand English. But the ALJ found that she has a "'limited' level of education . . . and is able to communicate in English." Aplt. App., Vol. I at 46. "Limited education" is defined as

> ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §§ 1564(b)(3), 416.964(b)(3). Limited-education contrasts with and exceeds "illiteracy" ("the person cannot read or write a simple message such as instructions or inventory lists") and "marginal education" ("ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of

5

jobs"). *Id.* Thus, the ALJ found that Ms. Richards has language skills greater than necessary to do simple, unskilled jobs.

Ms. Richards ignores the ALJ's finding regarding her education level. The remainder of her argument assumes she can read only at a first-grade level, but the ALJ did not make that finding. And although she cites to evidence supporting her claim of an inability to read, she makes no attempt to demonstrate that the ALJ's contrary finding is not otherwise supported by substantial evidence.[1] Consequently, Ms. Richards fails to show that the ALJ erred in not including a reading limitation in her RFC.[2]

## C. *RFC Limitations Related to Simple Work*

The RFC limits Ms. Richards to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions. Ms. Richards argues these limitations do not address all of her mental impairments,

---

[1] We note, for instance, that the ALJ cited to evidence that Ms. Richards' learning disorder does not limit her ability to drive, manage her money, or perform simple work tasks. As to her own contrary testimony, the ALJ found that Ms. Richards was only partially credible. She does not address this evidence, and in any event, we will not reweigh the evidence regarding her ability to speak, read, and understand English.

[2] The Commissioner contends that literacy is a vocational factor considered *only* at step five, rather than a functional limitation stemming from a medically determinable impairment. But Ms. Richards argues that her alleged inability to read stems from her learning disorder, which the ALJ found to be a severe impairment. In light of the ALJ's determination that Ms. Richards' language skills are sufficient for unskilled work, we have rejected above her first contention regarding error in her RFC. We therefore need not address or resolve the question whether literacy skills need only be considered at step five even when the claimant has a learning disorder which affects her literacy.

specifically learning disorder, major depressive disorder, bipolar disorder, and PTSD. But these kinds of restrictions in an RFC—or even a limitation to "unskilled work"— can adequately account for a claimant's mental impairments, depending on their nature. In *Vigil*, we held that the claimant's moderate problems with concentration, persistence, and pace were adequately addressed by an RFC limiting him to unskilled work. 805 F.3d at 1204. Thus, we reject Ms. Richards' contention that simple-work limitations like those in her RFC are never sufficient to address a claimant's mental limitations. *See id.*

In this case the ALJ found that, as a result of her mental impairments, Ms. Richards has no more than moderate difficulties in social functioning, concentration, persistence, and pace. She does not challenge these findings. Nor does she explain why, consistent with our reasoning in *Vigil*, her RFC's limitations regarding simple instructions and simple work-related decisions do not adequately address her problems with concentration, persistence, and pace. *See id.*[3]

Ms. Richards also fails to acknowledge the other limitations in her RFC directed to her mental impairments. In addition to the simple-work limitations, the RFC further confines her to "deal[ing] with only occasional changes in work processes and environment; hav[ing] no contact with the general public; and hav[ing] only incidental, superficial work-related type contact with co-workers and supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed."

---

[3] Although we decided *Vigil* after Ms. Richards filed her opening brief in this appeal, she did not file a reply brief.

Aplt. App., Vol. I at 43. Ms. Richards ignores these limitations and consequently neglects to explain why they do not adequately address her mental impairments. Finally, we have already rejected Ms. Richards' contention of error regarding the ALJ's failure to include a limitation on her ability to read in her RFC. She does not otherwise demonstrate that the simple-work limitations in her RFC do not adequately address her learning disorder.

### D. *GAF Scores*

#### 1. **ALJ Consideration of GAF Scores**

Ms. Richards contends that the ALJ failed to properly analyze GAF scores in her medical records. "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*") 32 (Text Rev. 4th ed. 2000)). Ms. Richards points to GAF scores between 40 and 48, which were reported from November 2011 to October 2012 by Dr. Cruse, a Consultative Examiner, and by her clinicians at Hope Community Services ("HCS"). "A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Id.* (quoting *DSM IV* at 34). Ms. Richards maintains the ALJ ignored the GAF score evidence, which she says conflicts with her RFC.

Ms. Richards fails to show that the ALJ ignored the GAF scores. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not

8

required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ discussed Dr. Cruse's examination findings in the decision and therefore clearly considered them. He also gave great weight to, and therefore also considered, two reports by state agency doctors who reviewed Ms. Richards' medical records and provided opinions on the work-related limitations resulting from her impairments. These reports both included the GAF score reported by Dr. Cruse, *see* Aplt. App., Vol. II at 416, Vol. III at 481, and the later report discussed Ms. Richards' care at HCS, *see id.* at 481. Moreover, the ALJ stated that he considered the entire record, and we take the ALJ at his word, unless shown otherwise. *See Wall*, 561 F.3d at 1070.

Ms. Richards nonetheless argues the ALJ was required to discuss the GAF scores in his decision. In addition to the evidence the ALJ relies on, he must also discuss "significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010. She contends the GAF scores are significantly probative evidence because they are low and were consistently reported over time. We are not persuaded.

"While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Here, the GAF scores are not, by themselves, "considerable evidence . . . counter[ing] the agency's position." *Clifton*, 79 F.3d at 1010 (internal quotation marks omitted). Neither Dr. Cruse nor the HCS clinicians explained how they calculated the scores or linked them to any particular symptoms. Nor did they indicate how the GAF scores affected Ms. Richards' functional abilities.

9

The most recent edition of the *DSM* omits the GAF scale "for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013). Ms. Richards accordingly has not demonstrated error in the ALJ's failure to discuss the GAF scores in his decision.

2. **GAF Scores as Medical Opinions**

Ms. Richards also contends the ALJ failed to properly evaluate the GAF scores as medical opinions. She maintains the ALJ must evaluate every medical opinion in the record and explain the weight given to it. And she argues the GAF scores conflict with the opinions of the state agency doctors that the ALJ relied on.

We are not convinced Ms. Richards preserved this issue for appellate review by specifically raising it in her objections to the R&R. A party waives appellate review of factual and legal issues when she fails to object to the findings and recommendations of a magistrate judge. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (internal quotation marks and brackets omitted). To preserve an issue, a party's objections to an R&R must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (stating that only sufficiently specific objections "will advance the policies . . . that led us to adopt a waiver rule in the first instance"). A party that objects to an R&R on certain grounds cannot add another ground on appeal. *See Port City Prop. v.*

10

*Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 nn.1-2 (10th Cir. 2008) (addressing arguments in favor of injunctive relief that plaintiffs made in their objections to an R&R, while holding other arguments for injunctive relief not included in their objections were waived).

The magistrate judge did not address whether the GAF scores are medical opinions that the ALJ should therefore have discussed. Ms. Richards in turn did not specifically renew her argument or object to the R&R's failure to address this issue. She needed to do so to preserve it for appeal.

In any event, Ms. Richards has not adequately briefed this issue on appeal. Although she asserts that an ALJ must evaluate every medical opinion by explaining the weight he assigns to it, she fails to provide argument or authority that a GAF score constitutes a medical opinion. "[C]ursory statements, without supporting analysis and case law," are insufficient to invoke our appellate review. *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007); *see also* Fed. R. Civ. P. 28(a)(8)(A) (requiring appellant to support her argument with citations to authority). We decline to consider arguments that are inadequately presented in an appellant's opening brief. *See Bronson*, 500 F.3d at 1104. Accordingly, we do not reach Ms. Richards' contention that the ALJ failed to evaluate the GAF scores as medical opinions.

### E. *Credibility Analysis*

Ms. Richards contends the ALJ improperly analyzed her credibility. She argues he failed to link any of the relevant credibility factors to specific evidence in the record. She further asserts he formulated her RFC before evaluating her

11

testimony, used boilerplate language, and adopted portions of the state agency consultants' opinions that agreed with his predetermined RFC. Ms. Richards specifically complains about the ALJ's reliance on her daily activities as improper in assessing her credibility.

Ms. Richards did not raise these contentions in her objections to the R&R. Her entire, two-sentence objection addressing the ALJ's credibility determination stated: "Simply, the Magistrate's reference to ER and MRI records as support for a credibility analysis is misplaced. Those things listed at page 14 have nothing to do with credibility." Aplt. App., Vol. III at 640. She does not repeat on appeal the contentions she raised in her objections to the R&R, and she has waived appellate review of the new issues she now seeks to raise. *See Port City Prop.*, 518 F.3d at 1190 nn.1-2.

### F. *Error at Step Five*

Ms. Richards finally contends the ALJ erred in relying on the VE's testimony at step five to find her not disabled. She argues that, as a result of the errors in her RFC, the hypothetical question the ALJ posed to the VE was flawed; and therefore, the VE's testimony fails to provide substantial evidence for the ALJ's decision. But Ms. Richards has not demonstrated any error in her RFC. A hypothetical question is sufficient if "it contained all of the limitations found to exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000). Ms. Richards does not contend that the ALJ's hypothetical question to the VE did not include all of her limitations as found by the ALJ.

## III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge