**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NAZLI McDONNELL; ERIC VERLO,

     Plaintiffs - Appellees,

v.

CITY AND COUNTY OF DENVER;
ANTONIO LOPEZ, Denver Police
Commander, in his official and
individual capacities; VIRGINIA
QUINONES, Denver Police Sergeant,
in her official and individual
capacities,

     Defendants - Appellants.

_____

AIRPORTS COUNCIL
INTERNATIONAL - NORTH
AMERICA,

     Amicus Curiae.

No. 17-1071

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:17-CV-00332-WJM-MJW)**

---

Wendy J. Shea (Writer Mott and Kirsten J. Crawford with her on the briefs),
Assistant City Attorneys, Denver, Colorado, for Appellants.

Andrew McNulty (David A. Lane and Mari Newman with him on the brief),
Killmer, Lane & Newman, LLP, Denver, Colorado, for Appellees.

Timothy J. Filer, Foster Pepper PLLC, Seattle, Washington (Thomas R. Devine, General Counsel, Airports Council International-North America, Washington, DC; Adrian U. Winder and Adrienne G. McKelvey, Foster Pepper PLLC, Seattle, Washington, with him on the brief), for Amicus Curiae.

---

Before **MORITZ**, **KELLY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Plaintiffs-Appellees, Nazli McDonnell and Eric Verlo, sought a preliminary injunction against Defendants, arguing policies and regulations governing protests and demonstrations at Denver International Airport ("DIA") violate their First and Fourteenth Amendment rights. The district court granted the injunction in part, concluding Plaintiffs made the necessary showing with respect to their claim that the challenged regulations are unreasonable because they do not contain a formal process for expediting permit applications in exigent circumstances. *McDonnell v. City & Cty. of Denver*, 238 F. Supp. 3d 1279, 1299-1301 (D. Colo. 2017). The district court also enjoined Defendants from enforcing certain regulations governing the location of permitted protests and picketing restrictions, including the size of signage. *Id*. at 1301-02.

Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we **reverse** the grant of the preliminary injunction.

## II. Background

DIA was established and is governed by the City and County of Denver Municipal Charter.  https://www.flydenver.com/about/administration (last visited Dec. 2, 2017).  Relevant to the matter before this court, § 5-16(d) of the Denver Revised Municipal Code provides as follows:

> The manager of aviation shall have the power and authority, and is hereby empowered and authorized, upon the basis of passenger flow or where necessitated by the peculiar character of Denver Municipal Airport System as an airport, to adopt rules and regulations pertaining to the exercise of First Amendment rights, including by way of example, but not by way of limitation, solicitation of contributions for charitable or religious purposes and the dissemination of printed material upon Denver Municipal Airport System.  Such rules and regulations shall establish reasonable time, place and manner guidelines for the exercise of such First Amendment rights.

The rules and regulations governing the management, operation, control, and use of DIA include Regulation 50, which regulates "all leafleting, display of signs, signature gathering, solicitations of funds and other speech related activity conducted at Denver International Airport for religious, charitable, or political purposes, or in connection with labor disputes."  Denver Revised Mun. Code § 50.01.  Regulation 50.03 prohibits any person or organization from engaging in speech-related activity at DIA for religious, charitable, or political purposes without first obtaining "a permit for such activity issued by the [Chief Executive Officer of Aviation] or his or her designee."  *Id*. § 50.03; *McDonnell*, 238 F. Supp. 3d at 1285-86.  An application to obtain the required permit must be

-3-

submitted "at least seven (7) days prior to the commencement of the activity for which the permit is sought." *McDonnell*, 238 F. Supp. 3d at 1286 (quoting Denver Revised Mun. Code § 50.04–1).

On January 28, 2017, an unpermitted protest was held at DIA in an interior area of Jeppesen Terminal colloquially known as the "Great Hall." *Id*. at 1287-88. The protest was in response to Executive Order 13769 which, *inter alia*, temporarily suspended entry into the United States of nationals from seven predominantly Muslim countries. Protecting the Nation From Foreign Terrorist Entry Into the United States, Exec. Order No. 13769 of January 27, 2017, 82 Fed. Reg. 8977 (Feb. 1, 2017). A second unpermitted protest, which was organized and attended by the Plaintiffs, was held in Jeppesen Terminal on January 29, 2017. *McDonnell,* 238 F. Supp. 3d at 1289. The January 28th protest was allowed to continue without a permit but protestors were eventually moved from the Great Hall to an outdoor plaza. *Id*. at 1289. The January 29th protest took place near the international arrival area at the north end of the Great Hall and continued for several hours. *Id*. Although protestors on both days were warned they could be arrested for continuing to demonstrate without a permit, no arrests were made. *Id*. The district court's order contains a comprehensive description of both protests. *Id*. at 1287-89.

On February 6, 2017, Plaintiffs filed a complaint in the United States District Court for the District of Colorado challenging the permitting process set

out in Regulation 50. Plaintiffs alleged violations of their First and Fourteenth Amendment rights and sought, *inter alia*, compensatory damages, injunctive relief, and a declaration that Regulation 50 is unconstitutional on its face. On the same day, Plaintiffs filed a Motion for Preliminary Injunction, seeking "an injunction prohibiting their arrest for standing in peaceful protest within Jeppesen Terminal." Plaintiffs asserted they were likely to succeed on the merits of their claim that Regulation 50 is a prior restraint that prohibits them from engaging in speech protected by the First Amendment. Arguing DIA is a public forum, they claimed Regulation 50 is facially unconstitutional because it is content-based and not narrowly tailored to serve a compelling government interest. *Cf. Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (holding "speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest"); *cf. also Verlo v. Martinez*, 820 F.3d 1113, 1129 (10th Cir. 2016) (discussing the three speech forums: the traditional public forum, the designated public forum, and the nonpublic forum). In the alternative, Plaintiffs argued they were likely to succeed on the merits of their claim even if DIA is determined to be a nonpublic forum because the restrictions on speech imposed by Regulation 50 are not reasonable. *Cf. Cornelius,* 473 U.S. at 800 ("Access to a nonpublic forum . . . can be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials

-5-

oppose the speaker's view." (quotation and alteration omitted)). Plaintiffs' argument included an assertion the seven-day advance notice requirement for obtaining a permit is not a reasonable restriction on First Amendment rights. Plaintiffs' briefing did not include any argument on signage restrictions.

The district court held a full-day hearing at which Plaintiffs and Defendants presented testimony. At the beginning of the hearing, the district court informed the parties it had determined DIA is a nonpublic forum and intended to apply a reasonableness standard to its analysis of Regulation 50. Plaintiffs and Defendants then presented the testimony of several individuals, including the Plaintiffs, a legal observer who attended the January 28th protest, the chief operating officer of DIA, the assistant director for terminal operations at DIA, and the law enforcement officer responsible for all police services at DIA. At the conclusion of the hearing, the district court asked Plaintiffs' counsel to state what Plaintiffs would include in the preliminary injunction if one was granted. In response, counsel stated:

> I would enjoin defendants from . . . arresting people for engaging in behavior that the plaintiffs or people similarly situated are engaging in. I would enjoin 50.09 of Regulation 50 as being overbroad. And I think the permit requirement[] is also overbroad.
>
> I don't—I don't know if there is necessarily a need for no permit requirement, I don't—I wouldn't say that DIA can't implement a permit requirement of some nature, but certainly having no exigent circumstances exception is not acceptable under the First Amendment. And the length of the—the notice requirement is unconstitutional.

On February 22, 2017, the district court entered an order granting the injunction in part, and denying it in part. As to Plaintiffs' argument that DIA is a public forum, the court noted the Supreme Court has definitively held that airport terminals are nonpublic forums. *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678-81 (1992); *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015) (recognizing the Supreme Court's ruling that airports are nonpublic forums). The district court further concluded that DIA is not a designated public forum. *See Cornelius*, 473 U.S. at 802 (holding a government entity may create a designated public forum by intentionally designating "a place not traditionally open to assembly and debate as a public forum"). Accordingly, it analyzed whether Plaintiffs had a likelihood of success on the merits of their claim that Regulation 50 is not reasonable in light of the purposes served by DIA.[1] *See Lee*, 505 U.S. at 687 (O'Connor, J., concurring) (stating that any restriction on speech in a nonpublic forum must be reasonable in light of the purpose of the forum and all the surrounding circumstances).

The district court ruled that Plaintiffs were unable to show they are likely to succeed on the merits of their claims that Regulation 50's advance permitting requirement, including Regulation 50.03's seven-day advance notice requirement,

---

[1]Noting that the primary purpose of DIA "is to facilitate safe and efficient air travel," the district court recognized that every arriving and departing passenger at DIA must pass through the Great Hall. *McDonnell v. City & Cty. of Denver*, 238 F. Supp. 3d 1279, 1297 (D. Colo. 2017).

-7-

is overbroad because it is unreasonable in all circumstances. *McDonnell,* 238 F. Supp. 3d at 1298-99. The district court, however, granted Plaintiffs' motion, in part, concluding Plaintiffs showed a strong likelihood of success on the merits of their claim that Regulation 50.03's lack of a formal process for expediting permit applications in exigent circumstances is unreasonable. *Id*. at 1299-1301. The district court further concluded Plaintiffs are likely to succeed on their challenge to Defendants' unfettered discretion to designate the location of permitted activity. *Id*. at 1301. The district court also granted a preliminary injunction as to the picketing restriction in Regulation 50.02-8 which prohibits picketing in the Jeppesen Terminal unless it is part of a labor protest. *Id*. at 1301-02. The court concluded Plaintiffs showed a likelihood of success on the merits of that claim because a ban on picketing "is foreclosed by Justice O'Connor's analysis of the leafleting ban[] at issue in *Lee*." *Id*. at 1301. Finally, the court concluded Plaintiffs can likely show Regulation 50.08-12, which restricts the size of signage to "one foot by one foot," is unreasonable. *Id*. at 1301-02.

Defendants appeal from the partial grant of the preliminary injunction.

## III.  Discussion

### A.  *Standard of Review*

A movant is not entitled to a preliminary injunction unless he can show: (1) he is likely to succeed on the merits of his claim; (2) he will suffer irreparable harm if the injunction is denied; (3) his threatened injury outweighs the harm the

grant of the injunction will cause the opposing party; and (4) if issued, the injunction will not adversely affect the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). Because the grant of a preliminary injunction is "an extraordinary remedy," the movant must make a "clear showing" that he is entitled to the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Further, the movant must meet a heightened burden if he seeks a preliminary injunction, like the one requested by Plaintiffs, that will alter the status quo. *Fish*, 840 F.3d at 723-24. When "seeking such an injunction [the movant] must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc).

This court reviews the grant of a preliminary injunction for abuse of discretion. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). A district court abuses its discretion when it "commits an error of law or relies upon a clearly erroneous factual finding." *Id*.

## B. Likelihood of Success On the Merits

### 1. Spontaneous Expression

The district court concluded Plaintiffs showed a strong likelihood of success on the merits of their claim that Regulation 50.03 is facially unreasonable because it does not contain a formal written process to obtain a permit in less than

seven days. *McDonnell*, 238 F. Supp. 3d at 1299-1301. The district court arrived at this conclusion notwithstanding its acknowledgment that "serious and substantial purposes [are] served by an advance notice requirement." *Id*. at 1299. The district court abused its discretion when it granted the preliminary injunction on this claim.

Under the "unreasonableness" standard applicable to nonpublic forums, *Lee*, 505 U.S. at 687 (O'Connor, J., concurring), a movant must show a strong likelihood of success on the merits. *O Centro Espirita*, 389 F.3d at 976 (en banc). Here, the district court acknowledged "[t]he parties have not cited, nor has the Court located, any case specifically discussing the need for a *nonpublic* forum to accommodate short-notice demonstrations." *McDonnell*, 238 F. Supp. 3d at 1299. The fact that Plaintiffs were unable to locate precedent supporting their position on spontaneous speech in a nonpublic forum led the district court to evaluate their claims based on case law addressing spontaneous speech in public forums. Relying on those cases, the district court concluded Plaintiffs made a strong showing that Regulation 50's lack of a formal exigency policy is unreasonable because it "does not account for the possibility of . . . short-notice demonstrations regarding suddenly relevant issues." *Id*. Analogizing to the twenty-four-hour notice the City of Denver requires to prepare for a spontaneous, topical parade on a public street, the district court concluded Plaintiffs would likely succeed on their claim that Defendants can accommodate a protest at DIA with twenty-four

hours notice in exigent circumstances. *Id*. The district court's analysis on this issue conflicts with the standard applicable to nonpublic forums and fails to apply the standard relevant to a preliminary injunction that disrupts the status quo.

A ruling that a plaintiff has a strong likelihood of success on the merits is based on the evidence plaintiff intends to present at trial, particularly when, as in this matter, plaintiffs cannot identify any case law supporting their position. *Cf. Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190-91 (10th Cir. 2008) ("[T]he district court held that [movant] failed to show a likelihood of success on the merits because it offered no evidence of a contract requiring Union Pacific to provide rail service to it."); *Hawkins v. City & Cty. of Denver*, 170 F.3d 1281, 1290 (10th Cir. 1999) ("*Lee* describes the reasonableness test as a factually-intensive, individualized inquiry."); *see also McNeilly v. Land*, 684 F.3d 611, 620 (6th Cir. 2012) (affirming denial of a preliminary injunction because movant failed to present sufficient evidence to show a likelihood of success on the merits). Here, the district court referenced the testimony of three airport administrators as support for its conclusion Plaintiffs could not show a strong likelihood of success on the merits of their claim that the seven-day advance notice requirement is unreasonable in all circumstances. *McDonnell*, 238 F. Supp. 3d at 1297-99 (summarizing testimony on the need for Defendants to have advance notice of a protest so they can instruct demonstrators on permissible activities, determine whether additional security is needed, understand the subject

-11-

matter of the protest as it relates to the need for additional security, and determine an appropriate location for the protest). The court, however, ignored that same testimony when it concluded Plaintiffs will likely prevail on their claim Regulation 50 is unreasonable because it does not allow speakers to obtain a permit with only twenty-four hours notice in exigent circumstances. Instead, the district court's conclusion was, by the court's own admission, not based on any record evidence but was, instead, based on "cases regarding *public* fora (streets and parks) [that] have held or strongly suggested that an advance notice requirement is unconstitutional if it does not account for the possibility of spontaneous or short-notice demonstrations regarding suddenly relevant issues."[2]

*Id*. at 1291-92, 1299 (referencing *American–Arab Anti–Discrimination Comm. v.*

---

[2]As already noted, Plaintiffs have not identified any cases so holding in situations involving *nonpublic* forums. The absence of such precedent is unsurprising. Because public forums occupy a "special position in terms of First Amendment protection due to their historic role as sites for discussion and debate," the government's power to restrict speech in a traditional public forum is "very limited." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (quotation omitted). The government may impose time, place, and manner restrictions only if they serve a significant government interest, are narrowly tailored, and provide alternative channels of communication. *Id*. Nonpublic forums do not have the same "traditionally open character of public streets and sidewalks." *Id*. Accordingly, "[a]ccess to a nonpublic forum . . . can be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (quotation and alternation omitted); *see also PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1204 (10th Cir. 2002) ("Content-neutral speech restrictions in a public forum are subject to strict scrutiny, while content-neutral restrictions in a nonpublic forum are subject to a reasonableness test.").

*City of Dearborn*, 418 F.3d 600, 605 (6th Cir. 2005) ("Any notice period is a substantial inhibition on speech."); *Church of Am. Knights of Ku Klux Klan v. City of Gary*, 334 F.3d 676, 682 (7th Cir. 2003) ("[G]iven that . . . political demonstrations are often engendered by topical events, a very long period of advance notice with no exception for spontaneous demonstrations unreasonably limits free speech."); *Douglas v. Brownell*, 88 F.3d 1511, 1524 (8th Cir. 1996) ("The five-day notice requirement restricts a substantial amount of speech that does not interfere with the city's asserted goals of protecting pedestrian and vehicle traffic, and minimizing inconvenience to the public.")).  The substantial difference between the legal standard applicable to a public forum and the standard applicable to a nonpublic forum renders the comparison inappropriate and legally erroneous.

Because it erroneously relied on principles applicable only to public forums, the district court failed to engage in the inquiry actually applicable to nonpublic forums when it resolved the exigency issue.  Regulations governing speech in a nonpublic forum are evaluated by analyzing the reasonableness of the restriction in light of the purpose of the forum.  Reasonableness is measured by evaluating the government's interest in "preserving the property for the use to which it is lawfully dedicated."  *Lee*, 505 U.S. at 688 (O'Connor, J., concurring) (quotations and alterations omitted); *Cornelius*, 473 U.S. at 799-800.  Any restriction "need only be *reasonable*; it need not be the most reasonable or the

-13-

only reasonable limitation." *Cornelius*, 473 U.S. at 808. In *Lee*, the Supreme Court upheld a ban on face-to-face solicitation at an airport as reasonable because such solicitation was "incompatible with the airport's functioning." 505 U.S. at 690 (O'Connor, J., concurring) (interacting with or avoiding solicitors would cause congestion because travelers are carrying baggage and frequently facing time constraints); *Hawkins*, 170 F.3d at 1291 (upholding restrictions on picketing and leafleting at the entrance to a performance venue because such activities were inconsistent with nonpublic forum's "limited purpose as an entertainment venue"). Accordingly, restrictions on speech in a nonpublic forum are not categorically unreasonable because they prevent near-spontaneous protests in the location "most obviously relevant" to the speaker. *McDonnell*, 238 F. Supp. 3d at 1299-1301. Because the district court engrafted public forum considerations onto the reasonableness standard applicable in cases involving a nonpublic forum, it erred in its analysis of the exigency issue.

The district court further erred by relying on its own belief that Defendants could shorten the permit period to twenty-four hours in exigent circumstances, choosing the twenty-four-hour period because that "is all the notice Denver needs to prepare for a street parade." *Id*. at 1300 n.5. The court's finding that Defendants are able to process permit applications and adequately prepare for a protest within twenty-four hours finds no support in the record and the court failed to engage in any evidence-based comparison of the differences between

-14-

street parades and airport protests.[3]  *Id*. ("At the Preliminary Injunction Hearing, Defendants' counsel argued that preparing for a street parade is actually easier than preparing for demonstrations at the airport.  The Court cannot fathom how this could possibly be the case, at least when comparing a typical street parade request to the typical Airport demonstration request.").  To the contrary, the district court's finding is incompatible with testimony presented at the hearing.  In response to questioning from the district court, Commander Lopez testified that five days is required to adequately prepare for a protest at DIA.

> [Commander Lopez]: . . . [F]ive days would have given me enough time to get help from downtown and get enough resources in place.
>
> The Court:  Is there any reason why that couldn't—putting aside budget, that couldn't be done in three days?
>
> [Commander Lopez]:  That's kind of tight.
>
> The Court:  Why is that?
>
> [Commander Lopez]:  Depending on what other events are being held downtown, then trying to coordinate the movement of personnel

---

[3]For example, DIA's chief operating officer, Kenric Greene, testified that the Great Hall is a "controlled area" and there are numerous "constraints" on the public's ability to access areas accessible from the Great Hall.  Mr. Greene also testified that the creation of TSA has "made the terminal a more crowded space" because passengers are now required to congregate in security areas.  The district court noted that "every arriving and departing passenger at the Airport . . . must pass through some portion of the Great Hall."  The Airport served 58.3 million passengers in 2016 and 36,000 people worked there.  *McDonnell*, 238 F. Supp. 3d at 1288.  Commander Lopez testified that routine security activities at DIA include foot patrols, car patrols, assistance at TSA screening points, and escorting bomb dogs through the airport.

with three days' notice might be harder to do. I mean, anything is doable; if we have to do it, we have to do it. As we demonstrated on the 28th and the 29th, we threw people together in a hurry to try to accommodate public safety, but preferably five days would be okay. Three days would, I think, be a stretch given vacations, days off, and we're having a lot of First Amendment activity downtown, and resources are being drawn into that. So in light of the current times, three days is really tight for us.

The Court: All right. Thank you.

Unlike the district court's unsupported analogy between street parades and airport protests, Commander Lopez's testimony is relevant to the governing standard, *i.e.*, whether "the restriction on speech is reasonable in light of the purpose served by the forum." *Hawkins*, 170 F.3d at 1287; *see also id.* ("[F]or a court to uphold a speech restriction as reasonable, it need not be the most reasonable or the only reasonable limitation." (quotation omitted)). Yet, the district court disregarded his testimony without explanation, choosing instead to base its ruling on its own beliefs. Because there is no record support for the district court's finding that Defendants can adequately[4] prepare for a protest at DIA with only twenty-four hours advance notice every time an exigent circumstance arises, the finding is clearly erroneous.

_____

[4]It is true that Commander Lopez testified that "anything is doable; if we have to do it, we have to do it." But that testimony does not speak to the question of whether twenty-four hours provides Defendants with adequate time to coordinate an optimal level of security at a busy international airport. The reasonableness of Regulation 50 must be evaluated in light of current circumstances, including heightened airport security in the wake of the September 11, 2001 airliner attacks on the World Trade Center and the Pentagon.

The district court's flawed analysis and clearly erroneous factual finding led it to conclude that Plaintiffs demonstrated a strong likelihood of succeeding in their challenge to the lack of an exigency provision in Regulation 50. The court abused its discretion in so concluding.

2. *Location*

For the same reasons discussed above, the district court also erred when it concluded Plaintiffs showed a strong likelihood of success on their challenge to Defendants' discretion to control the location of permitted speech. Once again, the court erroneously injected public forum standards into its analysis. *McDonnell*, 238 F. Supp. 3d at 1301 (referencing public forum cases involving "the power of location when conveying a message").

3. *Signage*

The district court also enjoined Defendants from enforcing restrictions on picketing. Regulation 50.02-8 defines picketing as "one or more persons marching or stationing themselves in an area in order to communicate their position on a political, charitable, or religious issue, or a labor dispute, by displaying one or more signs, posters or similar devices." *Id*. at 1286. Regulation 50.09 prohibits picketing "in all interior areas of the Terminal and concourses, in the Restricted Area, and on all vehicular roadways" and further states that picketing "shall not be conducted by more than two (2) persons at any one location upon the Airport." *Id*. Unlike its analysis of the permit process, the

district court did not evaluate this argument by applying standards applicable to public forums. Instead, the court concluded Plaintiffs are likely to prevail on a challenge to the picketing regulation because "[a]ny argument that the picketing ban is reasonable in the context of the Airport is foreclosed by" the Supreme Court's holding in *Lee*.[5] *Id*. at 1301. In *Lee*, the Court upheld a ban on solicitation at JFK International Airport but struck down a ban on leafleting,[6] concluding "leafleting does not entail the same kinds of problems presented by face-to-face solicitation." *Lee*, 505 U.S. at 690 (O'Connor, J., concurring) (quotations omitted). Here, the district court stated that picketing is "usually less obtrusive" than leafleting and, thus, cannot be banned under *Lee*. *McDonnell*, 238 F. Supp. 3d at 1301.

The district court's conclusion that Plaintiffs demonstrate a strong likelihood of prevailing on their challenge to the picketing regulation must be reversed because it finds no support in the record. When the district court compared picketing with leafleting, it found that "[s]ignholding is usually less

---

[5]Regulation 50.09 prohibits picketing "in all interior areas of the Terminal and concourses, in the Restricted Area, and on all vehicular roadways." *McDonnell*, 238 F. Supp. 3d at 1286. Thus, it does not completely ban picketing at DIA, but it restricts the number and location of picketers in a permitted protest. The January 28th protest, which included protestors holding signs, was allowed to continue on a plaza outside Jeppesen Terminal that leads to a hotel and a light rail station. *Id*. at 1289.

[6]In *Lee*, Justice O'Connor described leafleting as "the repetitive distribution of printed or written material." *Int'l Soc'y for Krishna Consciousness, Inc., v. Lee*, 505 U.S. 672, 685-86 (1992) (O'Connor, J., concurring).

obtrusive [than leafleting], given that the signholder often stays within an even smaller area and conveys his or her message passively to those who walk by and notice the sign." *Id*. at 1301. Even assuming the district court is correct that picketing resembles leafleting because the picketer's message is conveyed passively, picketing is different from leafleting because a passerby is not "free to read the message at a later time." *Lee*, 505 U.S. at 690 (O'Connor, J., concurring) (quotations omitted) (describing one of the "problems presented by face-to-face solicitation" inside an airport terminal as the fact "the recipient [must] stop in order to receive the message the speaker wishes to convey"). Because of the lack of evidence on the issue, the district court failed to properly evaluate whether the restrictions on picketing inside Jeppesen Terminal are "reasonable in light of the purpose served by the forum." *Cornelius*, 473 U.S. at 808; *see also Hawkins*, 170 F.3d at 1290 (noting the reasonableness inquiry is fact-intensive). Accordingly, the court abused its discretion when it concluded Plaintiffs met their burden of demonstrating a strong likelihood of prevailing on their challenge to the picketing regulation. *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998) ("An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings.").

On a related issue, the district court enjoined Defendants from enforcing the one-foot-by-one-foot signage restriction under Regulation 50.08-12. This

ruling is also reversed because the issue was not addressed in the briefing or during the hearing and neither party presented evidence on the matter. *McDonnell*, 238 F. Supp. 3d at 1301-02.

### 4. *Irreparable Harm, Balance of Harms, and Public Interest*

The district court's analysis of the three remaining preliminary injunction factors of irreparable harm, balance of the harms, and the public interest is cursory, but reviewable. *Id*. at 1305-06. The district court's analysis was based entirely on its conclusion Plaintiffs were likely to prevail on the merits of some of their claims. *Id*. (analyzing the remaining preliminary injunction factors by assuming a First Amendment violation). Because we have reversed that ruling, the court's analysis of irreparable harm, balance of harms, and the public interest is necessarily flawed and provides no support for the court's grant of the preliminary injunction.

## IV. Conclusion

"A preliminary injunction is an extraordinary remedy that is granted only when the movant's right to relief is clear and unequivocal." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) (quotations and alternations omitted). For the reasons detailed above, we **reverse** the district court's grant of a preliminary injunction in favor of Plaintiffs on their challenge to Regulation 50's lack of an exigency provision. We also **reverse** the district court's ruling enjoining Defendants from enforcing Regulation 50's restrictions

-20-

on picketing, including the size of signage, and its ruling enjoining Defendants from exercising their discretion to select the location of a permitted protest within the airport grounds.